**Donald M. DUSON et al., Appellants,**

**v.**

**Alan J. POAGE et al., Appellees.**

**No. 13264.**

Court of Civil Appeals of Texas.

Houston.

Oct. 30, 1958.

Rehearing Denied Nov. 20, 1958.

Lloyd G. Rust, Jr., County Atty., Wharton, Looney, Clark, Moorhead and Mathews, R. Dean Moorhead, Austin, for appellants.

A. T. Leveridge, Jr., East Bernard, Ingram & Moore; Irving Moore, Jr., Wharton, for appellees.

BELL, Chief Justice.

Alan J. Poage and John H. Boyd, appellees, are duly licensed physicians and surgeons in this State. They obtained their licenses to practice as such from the State Board of Medical Examiners after having qualified to take the examination required by law, by studying in a school teaching the theory of medicine known as Osteopathy.

The appellants are the Board of Managers of Nightingale County Hospital located at El Campo, Wharton County, and the members of the Commissioners Court of Wharton County.

The Nightingale County Hospital was established in 1940 under the terms of Articles 4478–4494, R.C.S.1925, Vernon's Ann.Civ.St. arts. 4478–4494, which Articles authorize the construction of hospitals by counties in Texas.

Appellee Poage was at such time a practitioner of medicine and surgery, and in his practice treated patients at the hospital through the years 1940–1955. He has practiced all the while at El Campo. A hospital staff of visiting physicians was established in 1950 and Dr. Poage became a member of the staff and remained on the staff through 1955. Members of the staff are elected for a one year period.

Appellee Boyd was licensed to practice medicine in 1955. After obtaining his license he applied for membership on the staff of the hospital. He practices his profession at the Village of Louise, Wharton County, which is about 11 miles from the hospital.

On December 12, 1955, the Board of Managers met to select a staff for the year 1956. There was in effect a rule passed by the Board of Managers providing that only members of the staff could treat patients at the hospital. At this meeting such Board had before it the applications of Dr. Poage for re-appointment and of Dr. Boyd for appointment to the staff. The

members of the existing staff, with the exception of Dr. Poage, were all physicians and surgeons who were graduates of an allopathic college of medicine approved by the American Medical Association. They recommended to the Board that Dr. Poage be not reappointed to the staff and that Dr. Boyd be not appointed. The members of the Board voted upon the appointment of Drs. Poage and Boyd and the vote was divided, three for and three against their appointment to the staff for the year 1956. There being a tie vote, the matter was referred to the Honorable Dorman Nickels, County Judge, for decision as provided by Article 4479, R.C.S.1925. On February 16, 1956, the Board again met, Judge Nickels being present, and he voted in favor of the appointment of Drs. Poage and Boyd. On February 17, 1956, at 9 o'clock a. m., all ten members of the staff who were licensed to practice medicine by the State Board of Medical Examiners after having qualified to take the examination required by law by studying at a school teaching the allopathic theory of medicine, resigned from the staff. This left only Drs. Poage and Boyd on the staff. On February 18, 1956, all of the registered nurses resigned. The vocational nurses were threatening to resign. From February 17th to the 20th only 4 new patients had been admitted to the hospital. By February 20th the number of patients had been reduced from 55 to 24.

At a meeting of February 20th the Board of Managers suspended Drs. Poage and Boyd from the staff for a period of 30 days, except they were permitted to treat their patients then in the hospital. At the same meeting the Board passed the following rule:

"2. Application for membership shall be presented in writing to the Superintendent not later than November 1st of each year, on the prescribed form, and shall state the qualifications and references of the applicant, and shall also signify his agreement to abide by the By-Laws, Rules and Regulations of the Board and the Superintendent. The applicant for membership shall be a graduate of a school of medicine approved by the American Medical Association, legally licensed to practice medicine in the State of Texas and in Wharton County, and a member in good standing of the Wharton-Jackson-Matagorda-Fort Bend Counties Medical Society."

That part of the rule requiring staff members to be members of the Wharton-Jackson-Matagorda-Fort Bend Counties Medical Society was later repealed.

The effect of the rule is to exclude from practice in the hospital all physicians who have not graduated from a school of medicine approved by the American Medical Association. This excludes all physicians who graduated only from a school of osteopathy. This excludes appellees, though they are admitted to be reputable persons and reputable physicians and surgeons.

The Board on March 8, 1956, held a hearing for Drs. Poage and Boyd to give them an opportunity to show cause why they should not be removed from the staff for "the best interest of the hospital or to maintain proper discipline in the hospital." After the hearing the Board removed them from the hospital staff and they could not be re-elected to the staff because of the above-quoted rule.

The Board acted as it did because the refusal of physicians of the allopathic school of medicine to serve on the staff and the refusal of the registered nurses to serve in the hospital presented to the Board a very difficult practical problem. The Board could continue to operate the hospital but at a very substantial loss because there would be only two doctors available to treat patients and whose private patients only would be served and these patients would be insufficient in number to substantially utilize the hospital facilities. The greater number of citizens would be without hospital facilities in the community as

this was the only public hospital in Wharton County and the only hospital in El Campo. There are two small private hospitals elsewhere in Wharton County. The board also was confronted with the fact that as long as an osteopath was permitted on the staff the hospital could not be accredited by the Joint Commission on Accreditation. The absence of being accredited means there is difficulty in collecting from some insurance hospitalization policies. Too, no nurses' training program could be carried on as graduates from the program could not get jobs in accredited hospitals. Neither could the Board obtain interns or residents because their work at an unaccredited hospital would go unrecognized. In any event, this was the position of the Board. It is supported by the facts to the extent that the Board would be unable to get accreditation by the Joint Commission on Accreditation of Hospitals. It could get accreditation by the Osteopathic organizations. Too, it could probably get osteopaths as residents and interns, and could possibly get nurses graduated from osteopathic programs. However, as a practical matter, it is a matter of common knowledge that in Texas there are relatively few osteopathic hospitals, they being located largely in the larger cities, and they being relatively small in size.

In October of 1956, a patient of Drs. Poage and Boyd, a Mrs. Douglas Yackel, presented herself to the Nightingale Hospital. Her application was signed by Drs. Poage & Boyd. She was to be delivered of a child. She was not admitted because she was the patient of these doctors. She was delivered some two hours later by an M. D. at the Caney Valley Hospital. The Board's rules would have permitted her admission to the hospital, but delivery could have only been by a member of the staff.

After this occurrence, Drs. Poage and Boyd brought this suit in the District Court of Wharton County, seeking a declaratory judgment determining their rights as duly licensed physicians and surgeons, who are admittedly reputable physicians, to use the facilities of the Nightingale Hospital for the treatment of their patients who need hospital care. The appellees detailed a number of matters upon which they sought a declaration by the court, but we need not notice them separately as really the only point involved is whether they are legally entitled to use the hospital facilities for treatment of their patients.

The trial court held as follows:

"(1) That the Plaintiffs, Alan J. Poage and John H. Boyd, are reputable physicians within the meaning of that term under the County Hospital Act, Title 71, Chapter 5, Texas Civil Statutes.

"(2) That Plaintiffs as reputable physicians within the meaning of the County Hospital Act, Title 71, Chapter 5, Texas Civil Statutes, in accordance with the provisions of said act may admit residents of Wharton County, Texas, to the Nightingale County Hospital at El Campo, Texas, by signing Applications for Admissions for such residents.

"(3) That residents of Wharton County, Texas, who have been admitted to the Nightingale County Hospital upon applications for admission signed by the Plaintiffs have the right to the medical and surgical services of the Plaintiffs while they are in the hospital.

"(4) That Plaintiffs are entitled to treat residents of Wharton County, Texas, in the Nightingale County Hospital when requested to do so by such patients.

"(5) That the Plaintiffs may not be excluded from the staff of the Nightingale County Hospital because they are not members of the Wharton-Jackson-Matagorda-Fort Bend Counties Medical Society.

"(6) That the Plaintiffs may not be excluded from the staff of the Nightingale County Hospital because they

are not graduates of medical schools approved by the American Medical Association.

"(7) That Plaintiffs may not be excluded from the Staff of the Nightingale County Hospital nor prevented from practicing therein because they hold only the degree of Doctor of Osteopathy.

"(8) That the action of the Board of Managers of the Nightingale County Hospital in removing the Plaintiffs from the staff of the hospital with no expressed basis therefor other than 'for the best interests of the hospital' and 'to preserve order' was illegal as being an arbitrary and unreasonable exercise of discretion.

"(9) That the action of the Board of Managers of the Nightingale County Hospital in removing the Plaintiffs from the Staff thereof for the purpose of qualifying the hospital for accreditation by the Joint Commission on Accreditation of Hospitals was unreasonable and arbitrary and not a permissible exercise of discretion.

"(10) That the physicians who resigned from the staff of the Nightingale County Hospital on February 17, 1956 in protest of the action of the Board of Managers in re-appointing A. J. Poage, D. O. and appointing John H. Boyd, D. O., to the Staff of the hospital, did so arbitrarily and in violation of their obligation to serve on the staff of the Hospital for the balance of their existing appointment thereto.

"(11) That the Registered Nurses who resigned from the Staff of the Nightingale County Hospital on February 18, 1956 in protest of the actions of the Board of Managers in reappointing A. J. Poage, D. O. and appointing John H. Boyd, D. O. to the Staff of the Hospital, did so arbitrarily and in violation of their Contract of employment with the hospital.

"(12) That the action of the Board of Managers of the Nightingale County Hospital in removing the Plaintiffs from the Staff of the Hospital in order to induce the return of the resigned physicians to the staff of the hospital and the return of the resigned Registered Nurses to the employment of the hospital, was unreasonable and arbitrary and not a permissible exercise of discretion.

"(13) That the order of the Board of Managers of the Nightingale County Hospital in removing Plaintiffs from the Staff of the Hospital being arbitrary and unreasonable was therefore a nullity."

The effect of the judgment, regardless of detailed declarations, is that under the County Hospital Act, Title 71, Ch. 5, R.C.S. 1925, Drs. Poage and Boyd, being reputable physicians and surgeons duly admitted to practice in Texas, are entitled to treat their private patients in the Nightingale County Hospital and the rule of the Board of Managers requiring a member of the staff to be a graduate of a school of medicine approved by the American Medical Association is invalid as being arbitrary and unreasonable.

The appellants contend that a physician and surgeon has no legal right, merely by virtue of being a duly licensed practitioner of medicine, to practice his profession in a public hospital and that the Board of Managers of a county hospital is given authority by the County Hospital Act to prescribe reasonable rules and regulations for the government of the hospital. They say the County Hospital Act gives them authority to determine who shall be on the hospital staff and that the rule requiring a staff member to be a graduate of a school of medicine approved by the American Medical Association is a reasonable rule.

Appellees contend the County Hospital Act gives all reputable physicians and surgeons who are duly licensed in Texas and the county where the hospital is located, the right to obtain admission of their pa-

tients to the hospital and the right to themselves treat their patients so admitted. While they admit that the Board may adopt reasonable rules and regulations governing the operation of the hospital, they say the rule requiring staff members to be graduates of a school of medicine approved by the American Medical Association is arbitrary and unreasonable. Too, they say the rule is an invalid delegation by the Board of its authority to the American Medical Association to determine the qualifications of staff members.

We have been cited to no case in Texas, and have found none in our independent search, decided by a State court that has passed on the question of whether a person who has been duly licensed in Texas as a physician and surgeon may be excluded from practicing his profession in a public hospital. However, the Supreme Court of the United States, in the case of Hayman v. City of Galveston, 273 U.S. 414, 47 S.Ct. 363, 364, 71 L.Ed. 714, held that an osteopath duly licensed in Texas as a physician and surgeon was not denied due process or equal protection of the laws under the Constitution by being excluded from practice in a city operated hospital because he was an osteopath. The Court also held that Article 16, Sec. 31 of the Constitution of Texas, Vernon's Ann.St. providing that the legislature in prescribing the qualifications for practitioners of medicine should not give preference to any school of medicine applied only to the qualifications of those admitted to practice and had nothing to do with the qualifications of those who were to be allowed to practice in a State hospital. The court in its opinion said:

"But it is argued that, if some physicians are admitted to practice in the hospital, all must be, or there is a denial of the equal protection of the laws. Even assuming that the arbitrary exclusion of some physicians would have that legal consequence in the circumstances of this case, the selection complained of was based upon a classification not arbitrary or unreasonable on its face. Under the Texas Constitution and statutes, anyone who shall 'offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method, or to effect cures thereof' is a physician and may be admitted to practice within the state. Article 16, § 31, Texas Constitution; Complete Tex.Stat.1920, arts. 5739, 5741, 5745 [Vernon's Ann.Civ.St. arts. 4501, 4503, 4510]. We cannot say that a regulation excluding from the conduct of a hospital the devotees of some of the numerous systems or methods of treating diseases authorized to practice in Texas, is unreasonable or arbitrary. In the management of a hospital, quite apart from its use for educational purposes, some choice in methods of treatment would seem inevitable, and a selection based upon a classification having some basis in the exercise of the judgment of the state board whose action is challenged is not a denial of the equal protection of the laws. * *

"The validity of the action of the board under the Texas Constitution is also before us. Article 16, § 31, of the Texas Constitution provides:

" 'The Legislature may pass laws prescribing the qualification of practitioners of medicine in this state, and to punish persons for malpractice, but no preference shall ever be given by law to any schools of medicine.'

"The limitation of the provision is obviously directed to the qualifications of those to be admitted to the practice of their profession in the state and has nothing to do with the qualifications of those who are to be allowed to practice in a state hospital or to participate in an educational enterprise conducted by the state."

■ While the holding of that Court is not binding on us in so far as it interprets the meaning of the state Constitution, the

decision is highly persuasive, and we happen to be in accord with its interpretation.

The holding is supported by the following authorities from other states: Newton v. Board of County Com'rs of Weld County, 86 Colo. 446, 282 P. 1068; Richardson v. City of Miami, 144 Fla. 294, 198 So. 51; and Green v. City of St. Petersburg, 154 Fla. 339, 17 So.2d 517.

■ Appellees urge, however, that the County Hospital Act gives them the absolute right to practice in a County Hospital. They admittedly can point to no express provision giving them this right, but they say such right is implied by the terms of the Act.

We are unable to agree with this interpretation of the County Hospital Act and hold there is nothing in Articles 4478–4494 (The County Hospital Act) which gives any physician and surgeon the right to practice his profession in a county hospital.

We must examine the Act to determine the legislative intent. We must examine the whole of the Act and not merely isolated parts.

Appellees rely primarily on Article 4486, which deals with the admission of patients. This Article reads as follows:

"Any resident of the county in which the hospital is situated, desiring treatment in such hospital, may apply in person to the superintendent or to any reputable physician for examination, and such physician, if he finds that such person is suffering from any illness, disease or injury may apply to the superintendent of the hospital for his admission. Blank forms for such application shall be provided by the hospital and shall be forwarded by the superintendent thereof free to any reputable physician in the county upon request. So far as practicable, applications for admission to the hospital shall be made upon such forms. The superintendent upon receipt of such application, if it appears therefrom that the patient is suffering from illness, disease or injury, and if there be a vacancy in said hospital, shall notify the person named in such application to appear in person at the hospital. If upon personal examination of such patient, or of any patient applying in person for admission, the superintendent is satisfied that such person is suffering from any illness, disease or injury, he shall admit him to the hospital as a patient. All such applications shall state whether, in the judgment of the physician, the person is able to pay in whole or in part for his care and treatment while at the hospital. Every application shall be filed and recorded in a book kept for that purpose in the order of its receipt. No discrimination shall be made in the accommodations, care or treatment of any patient because of the fact that the patient or his relatives contribute to the cost of his maintenance, in whole or in part. No patient shall be permitted to pay for his maintenance in such hospital a greater sum than the average per capita cost of maintenance therein, including a reasonable allowance for the interest on the cost of the hospital. No officer or employee of such hospital shall accept from any patient thereof, any fee, payment or gratuity whatsoever for his services."

■ An analysis of this Article will reflect that a person is not entitled to admission to the hospital on the certificate of a reputable physician. Even though a patient holds a certificate from a reputable physician that he is suffering from an illness, disease or injury, the superintendent is under a duty to satisfy himself through a personal examination of the person that the person is suffering from an illness, disease or injury before the person is entitled to admission. If the superintendent finds he is so suffering the patient will be entitled to admission. There is nothing, however, that states he is entitled to be treated by his own physician. Appellees say this

is implied. However, we must read the whole Act. Article 4485, in dealing with the duties of the superintendent, states it shall be his duty to cause a physical examination to be made of all persons admitted to the hospital and provide for the treatment of each patient according to his need. The same Article provides the superintendent shall discharge any patient who wilfully or habitually violates hospital rules, who is found not to be sick, diseased or injured; who is found to have recovered; or, who is no longer suitable for treatment in the hospital. Article 4480 sets out the powers of the Board of Managers. It provides that the Board shall appoint a staff of visiting physicians who shall serve without pay and who shall visit and treat patients in the hospital, when requested by the superintendent or the managers. This is, we think, of special significance. It evidences an intent on the part of the legislature that the Board of Managers shall determine what doctors shall practice in the hospital. It would seem that this provides a method by which the Board can obtain a physician who would be required to take care of the indigent. There is no way a doctor could be required to treat a patient, but if the Board makes him a member of its staff and thus gives him the right to treat his private patients in the hospital, it will thus be able to exact from a staff member the treatment of others in the hospital who need the care of a physician. If any reputable licensed physician is entitled to practice in the hospital, then why any provision for a staff? To hold that any reputable licensed physician can practice in the hospital would render meaningless this provision of the Act. It is a well established rule of statutory construction that the legislature did not intend to do a useless thing by putting a meaningless provision in a legislative act.

Appellees further point to Article 4483, which provides that the Board shall from time to time purchase from the State Board of Health rules and regulations dealing with the care of persons suffering from communicable diseases and for the prevention and spread of such diseases, and shall send such matters to all practicing physicians. This has nothing to do with treatment by physicians of their patients in the hospital. It is a matter of common knowledge that the treatment and control of most communicable diseases is without hospitalization. Too, this Article calls for the dissemination of this literature to schools, both public and private, and to churches, societies, unions and individuals. This is wholly unrelated to any right to practice medicine.

The Hospital Act was passed by the legislature in 1913. It has, in its basic features, remained unchanged. It was passed so as to authorize anyone of the 254 counties in Texas to construct a hospital. In the different counties there were and are varied and varying conditions and problems involving health of the people. The legislature surely had such in mind and studiedly avoided legislating in detail concerning the operation of the hospital. It wisely left to the Board of Managers very broad powers to be employed in the operation of the hospital. Conditions in one locality might be entirely different from those in some other locality, so that a rule would be desirable in one place but wholly unworkable in another. Article 4480 provides in part:

"The board shall have the general management and control of the said hospital, grounds, buildings, officers and employees thereof; of the inmates therein, and of all matters relating to the government, discipline, contracts and fiscal concerns thereof; and make such rules and regulations as may seem to them necessary for carrying out the purposes of such hospital."

■■ This enjoined upon the Board the duty of adopting such rules as are reasonably necessary to carry out the purposes of the Act. The purpose of the Act was to enable a county to establish a hospital and operate it in a manner that would best serve the greatest number in the community. The Act recognizes there will be problems in discipline, both with respect to patients

and doctors. It authorizes the Board to adopt rules relating to discipline. One of the age-old problems is the conflict between osteopaths and allopaths. If in a given community the hospital can best be operated by the exclusion of osteopaths, we find no inhibition in law to such exclusion. We do not mean to say that in this case the appellees did anything to occasion any disciplinary action toward them. In fact, we feel the record shows to the contrary. It is, however, within the power of the Board to determine what rules are necessary to maintain discipline in a manner that will enable them to successfully operate the hospital. The Board might well not agree with the precipitate action of the allopaths, but still feel in the light of the problem thus presented that it was necessary to get them back on the job in order to adequately care for the health of the people in the community. From the record in this case, we feel that this was the position of the Board.

While the Board cannot act arbitrarily, the mere fact that we, had we been in their position, might not have taken the same action as did they, does not make their action arbitrary and unreasonable. The Board was confronted with a very practical problem. They felt, and with reason, that the hospital could not be operated without doctors of the allopathic school of thought taking care of patients in the hospital. No one could require such doctors to do so, even though one might be convinced that the refusal of the doctors to do so was unreasonable. The concern of the Board was not the doctors who perhaps acted unwisely. The Board's concern was how they could operate the hospital so as to best serve the community. There would, so the Board determined, and such determination is not without support in the record, be a substantial loss to the hospital if it were to serve only the patients of appellees. Too, appellees would be unable to furnish needed medical care to those who might need hospitalization. The registered nurses also had resigned. It is difficult to see how a hospital can be operated without registered nurses. The vocational nurses were threatening to resign. The hospital could have been closed, but the community would then be without any hospital facilities. Too, it seemed desirable that the Board have an accredited hospital. They could not obtain accreditation with osteopaths on the staff, that is, accreditation by the Joint Commission on Accreditation, with the attendant loss of opportunity for residents and interns and nurses' training, and difficulty in insurance collections.

The Board chose to adopt a rule requiring staff members to be graduates of schools of medicine approved by the American Medical Association. There can be little question that such a rule is reasonable because it thus requires high standards of medical training. We are, however, of the view and so hold that the rule is invalid because it constitutes a delegation of power by the Board to itself determine the qualification of its staff members. There is nothing, in our opinion, which will prevent the Board from adopting the same standards as are required at a given time by the American Medical Association. They thereby adopt the standards as their own. However, if the rule has prospective operation so that the American Medical Association may change its rules and they thus become the test of whether a physician is qualified for the staff, there is an unlawful delegation. We have found no cases directly in point and none have been cited. On principle, however, we feel there is an unlawful delegation.

Appellants cite the cases of Kennedy v. Schultz, 6 Tex.Civ.App. 461, 25 S.W. 667, and Dowdell v. McBride, 92 Tex. 239, 47 S.W. 524, as supporting the validity of the above rule. No question was raised in either case concerning an unlawful delegation of authority.

We have read each authority cited by appellees. We deem them to be distinguishable because of the provisions of the statutes involved.

This was a suit asking no specific relief but merely seeking a declaration concerning appellees' right, they being reputable physicians, to treat their patients in the county hospital. In the light of this, the question arises as to the particular judgment this Court should enter. We have concluded that the proper judgment is to reverse and remand the case to the trial court, with direction to enter the following judgment:

"(1) That the Plaintiffs, Alan J. Poage and John H. Boyd, are reputable physicians within the meaning of that term under the County Hospital Act, Title 71, Chapter 5, Texas Civil Statutes.

"(2) The Plaintiffs as reputable physicians within the meaning of the County Hospital Act, Title 71, Chapter 5, Texas Revised Civil Statutes, 1925, may sign applications for the admission of patients to the Nightingale County Hospital, but such patients may be admitted only after the superintendent determines they are suffering from an illness, injury or disease.

"(3) Patients admitted to the Hospital may be treated only by members of the hospital staff.

"(4) Plaintiffs may be excluded from the Hospital staff because they hold only a degree of Doctor of Osteopathy.

"(5) The rule of the Board that only graduates of a medical school approved by the American Medical Association is invalid as it is a delegation of authority by the Board of Managers.

"(6) Residents of Wharton County admitted to the Hospital are not entitled to the medical and surgical services of Plaintiffs even though they request such services, unless Plaintiffs are on the Hospital staff."

There are various other declarations made in the trial court's judgment, which we do not make a part of the judgment we direct to be entered, and we here state our reasons for not making them a part of the judgment:

1. The rule requiring staff members to be members of the Wharton-Jackson-Matagorda-Fort Bend Counties Medical Society has been repealed.

2. Those paragraphs in the trial court's judgment dealing with the removal of appellees from the staff for the year 1956 present a moot question.

3. The paragraphs dealing with whether the action of the doctors and registered nurses in resigning was proper have no bearing on the rights of appellees to practice in the Hospital.

The judgment of the trial court is reversed and remanded with instructions.