**In re Katy SAENZ.**

**No. 13–99–131–CV.**

Court of Appeals of Texas, Corpus Christi.

April 8, 1999.

John David Bell, Wood, Boykin & Wolter, Corpus Christi, amicus curiae.

Juan Perales, Robstown, for appellant.

Epimenio Ysassi, Corpus Christi, Fela Lerma, Paula Wakefield, Robstown, Frank A. Lazarte, Corpus Christi, for real parties in interest.

Before Chief Justice SEERDEN, and Justices DORSEY and RODRIGUEZ.

## OPINION

Opinion by Justice DORSEY.

In this petition for writ of mandamus, relator Katy Saenz asks us to construe a provision of the recently adopted city charter of Robstown, Texas, and require the mayor and city secretary to call and hold an election for office of mayor at the upcoming city election. Relator maintains the election of mayor in May 1999 is mandated by the city charter. She applied for an application for filing for the position of mayor in that election, but was denied it by the city secretary because the mayor, the Honorable Fela Lerma, respondent, had not called for the office of mayor to be on the ballot at the May, 1999 election. Our jurisdiction is invoked under the section 273 of the Texas Election Code. TEX. ELEC.CODE ANN. § 273.061 (Vernon 1986). We deny the petition and refuse to issue the writ.

The citizens of Robstown, Texas adopted an amendment to the city charter on May 3, 1998, that provided for certain changes in the election of mayor and city council. Prior to the amendment, the city governing board consisted of a mayor and five council members, with the mayor and two council members elected every even numbered year, and three members elected every odd numbered year, each for a two year term. The mayor can be elected by a plurality vote.

The 1998 charter amendment expanded the council to six members who, with the mayor, would be elected to two year terms, with all being elected in odd numbered years on the first Saturday in May. All council members take office at the first council meeting after the votes are can-

vassed from the regular election, but if a run off election is required, they take office at the first council meeting after the run off. In order to provide for a transition from the former charter's requirements of half of the governing body being elected each year to all being elected in odd numbered years, and to allow for the additional member of the council, the new charter provides, in Section 1:

(d) In order to effect a transition upon the adoption of this Charter, the mayor and five council members in office effective upon canvassing of the election results of the May 2, 1998 election shall appoint one qualified resident of the city *to serve as a sixth council member who together with the seated mayor and council members will serve until the canvass of election results of the May 1, 1999 election.* All members elected at the May 1, 1999 election shall serve two year terms. The terms of office of the council members elected on May 2, 1998 shall be extended to the election in May 2001 to coincide with the terms of office of the other council members. Upon the conclusion of the elections in May 2001, this transition provision shall automatically expire. (Emphasis added.)

At issue is whether the language italicized above calls for the election of a mayor at the May 1999 election. Relator argues that the plain language of the transition provision, "who together with the seated mayor and council members will serve until the canvass of the election results of the May 1, 1999 election," mandates that the mayor be elected in May 1999 if the term of office of the present mayor expires with the canvass of the May 1999 votes.

Mayor Lerma was elected at the May 1998 election, at which time the new charter was adopted. Mayor Lerma was elected under the prior charter, which provided for a two year term and required only a plurality of the votes to win. Under relator's construction, Mayor Lerma's term under the new charter is shortened to one

year, although paragraph (d) extends the terms of office of "council members elected on May 2, 1998" until May 2001, for a three year term.

Respondent's construction of the critical language of paragraph (d) is that only the newly appointed council member will serve until the next election in May 1999, when she will stand for election with the other three council members, who are regularly scheduled for election in odd numbered years. Respondent argues that the language "together with the seated mayor and council members" refers to powers conferred on the newly appointed council member, as part of the governing board of the city "together with the seated mayor and council members."

 Respondent argues that Article XI, section 11, of the Texas Constitution precludes the construction urged by relator, because it would have the effect of shortening the mayor's term to less than two years. That provision provides in pertinent part:

A Home Rule City may provide for by charter or charter amendment, and a city, town or village operating under the general laws may provide by majority vote of the qualified voters voting at an election called for that purpose, for a longer term of office than two years for its officers, either elective or appointive, or both, but not to exceed four (4) years; provided, however, that tenure under Civil Service shall not be affected hereby.

Tex. Const. art. 11 § 11 (Vernon 1993).

Respondent argues that providing for a term of office less than two years for the mayor, which would be the result of relator's construction of the transition paragraph, violates that section. We disagree. By its plain terms, section 11 limits the maximum term for a municipal officer to four years and provides that, should the municipality wish the term to exceed two years, that such must be stated in the city charter. We do not interpret this section

to prohibit the temporary shortening of a term of office in a home rule city.

■ However, we are mindful of the rule that legislative attempts to shorten the term of a sitting public official must be strictly construed. *Manry v. McCall*, 22 S.W.2d 348 (Tex.Civ.App.—Beaumont 1929, no writ). We will strictly construe any language tending to shorten a term of office against such a construction, and will require clear and convincing language to accomplish that end.

■ We must interpret a city charter by reading it as a whole and harmonizing its various provisions as far as possible, considering every word, phrase, and expression as if each had been deliberately chosen and used for a purpose. *Hammond v. City of Dallas*, 712 S.W.2d 496, 498 (Tex.1986); *De Alejandro v. Hunter*, 951 S.W.2d 102, 106 (Tex.App.—Corpus Christi 1997, orig. proceeding). Conversely, we will not presume that any language in the provision is meaningless, superfluous, or useless. *Duson v. Poage*, 318 S.W.2d 89, 96 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.); 82 CJS *Statutes* § 318 (1953).

■ Section One of the charter, of which the contested provision is subparagraph (d), states as follows:

Sec. 1. Membership and Term.

(a) The city council shall consist of a mayor elected by majority vote at large and six council members elected by majority vote at large, each of which shall run for office in a numbered place position. Any person having the qualifications provided by law and this charter who is a resident of the city shall be eligible as a candidate for mayor or any one of the six council member places.

(b) The mayor and members of the city council shall be elected for terms of two years and shall hold office until their respective successors have been elected and qualified. The regular election shall be held in odd-numbered years on the first Saturday in May unless the city council designates an alternative date allowed by state law at least six months prior to the regular election.

(c) All council members shall take office at the first counsel meeting after the votes are canvassed from the regular election; provided, however, that in the event a run-off election is required, all council members shall take office at the first council meeting after the votes are canvassed from the run-off election.

(d) In order to effect a transition upon the adoption of this Charter, the mayor and five council members in office effective upon canvassing of the election results of the May 2, 1998 election shall appoint one qualified resident of the city to serve as a sixth council member who together with the seated mayor and council members will serve until the canvass of the election results of the May 1, 1999 election. All members elected at the May 1, 1999 election shall serve two year terms. The terms of office of the council members elected on May 2, 1998 shall be extended to the election in May 2001 to coincide with the terms of office of the other council members. Upon the conclusion of the elections in May 2001, this transition provision shall automatically expire.

Each paragraph addresses a particular concern. Paragraph (a) gives the makeup of the city council and the qualifications of office. Paragraph (b), the length of terms and election years; paragraph (c)—when members assume office; and (d), the necessary transition provisions from the old charter to the new, providing for expansion of the city council and the adjustment from annual elections to bi-annual ones.

We principally apply several presumptions in deciding this case: first, that the changes should not have the effect of shortening an office holder's present term of office unless the language clearly and unambiguously requires that conclusion; second, that a paragraph generally addresses

one topic in usual grammatical usage and a sentence one principal thought.

In reviewing paragraph (d), we find the first sentence, which contains the unfortunate language at issue here, addresses principally the expansion of the city council from five members to six, excluding the mayor, and provides how that new council member will be chosen and how long he will serve. Because the sentence is devoted to the filling of the new council seat, which has nothing to do with the term of office of the sitting mayor, we conclude the language, "who together with the seated mayor and council members", refers only to the authority of the new member to serve with the mayor and council members to govern the city. Only the newly appointed council member's term expires with the canvass of the results of the May 1, 1999, election. The seated mayor's term of office is not affected.

The petition for writ of mandamus is denied.