# DECEMBER, 1932

Thomas H. Foley v. H. Y. Benedict, President University of Texas, et al.

No. 6330.   Decided December 22, 1932.
(55 S. W., 2d Series, 805.)

*J. D. Barker,* of Cisco, for relator.

Said rule being unreasonable and arbitrary and violative of relator's valuable rights under the Constitution and laws of the State, same should not be enforced against him, and should be abrogated, set aside and held for naught. Bill of Rights, Art. 1, Sections 2, 19, 20, 21; Constitution, Art. 7, Sec. 10; 38 C. J., p. 734, par. 339; Stephens v. Humphrey (Ark.), 224 S. W., 442; State ex rel Biggs v. Penter, 70 S. W., 375; Hughes v. Outlaw, 197 Ala., 452, 73 So., 16; Tape v. Hurley, 66 Cal., 473, 6 Pac., 129; Perkins v. Independent School District, 56 La., 476, 9 N. W., 356; State ex rel Kelley v. Ferguson, 95 Neb., 63, 144 N. W., 1039; Roper & Gilly v. Lumpkins, 163 S. W., 110; Fayssoux v. Kendall County, 55 S. W., 583; Stone v. Kendall, 268 S. W., 759.

*James V. Allred,* Attorney General, *Bruce W. Bryant* and *Gaynor Kendall,* Assistants Attorney General, for respondents.

Since the Board of Regents exercises delegated powers, its rules are of the same force as would be a like enactment by the Legislature, and its official interpretation placed upon the rule so enacted becomes a part of the rule. West Texas Compress & Warehouse Company v. Panhandle & S. F. Ry. Co. et al., 15 S. W. (2d) 558, 560.

Relator further complains that the rule is unreasonable in that he is barred from readmission into the School of Medicine in the University of Texas. It is stated that the right of admission cannot be enforced where there is not room in the University or colege. State v. White, 82 Ind., 278, 42 Amer. Rep., 496. It is also stated as a rule of law that whether a rule is reasonable may depend upon the surrounding circumstances. Zucht v. San Antonio School Board (Texas Civ. App.), 170 S. W., 840.

*Ira P. Hildebrand,* of Austin, as amicus curiae.

MR. JUDGE SHARP delivered the opinion for the Commission of Appeals, Section A.

This is an original proceeding filed by relator, Thomas H.

Foley, against H. Y. Benedict, President of the University of Texas, R. L. Batts, Edward Crane, Robert L. Holliday, John I. Frances, Edward Randall, Beauford Jester, Lester Waggener, John T. Scott, and M. F. Yount, Regents of the University of Texas, and George E. Bethel, Dean of the School of Medicine of the University of Texas, respondents, asking that a writ of mandamus be awarded compelling the respondents to reinstate him as a student in the School of Medicine of the University of Texas at Galveston.

The cause is here on an agreed statement of facts. The controlling facts are as follows:

The School of Medicine at Galveston is a school in and is a part of the University of Texas and is under the control and management of the Board of Regents of the University of Texas. Under its statutory power to make and enact all such by-laws, rules and regulations necessary for the successful management of the University, the Board of Regents has adopted the following rules, inter alia, applicable to the School of Medicine:

"In the interest of efficiency, it has been decided to limit the freshman class to 100, no students except bona fide Texans being accepted." (University of Texas Bulletin No. 3205, Part IX, Medical Branch Catalogue Number, 1932-1933, p. 21).

"The session is divided into two semesters of fifteen teaching weeks each. Examinations are held at the end of the first semester during the last week of January, and at the end of the session during the last two weeks of May. The examinations at the end of a semester are final for the work of that semester. A grade of 70 per cent or more is required to secure credit in any subject.

"Students who fail to make satisfactory grades in three major subjects or their equivalent, or in two major subjects where the general average is less than 70, shall be automatically dropped from the roll and shall not be readmitted.

"A student whose grades are unsatisfactory may be conditioned in less than three major subjects. Examinations for the removal of conditions will be held during the last week of September, preceding the next session, and a grade of 75 per cent or more is required in such examination.

"Examinations for the removal of conditions in the work of the first semester may be taken at the time of the final examinations at the end of the session provided the student obtains special permission of the faculty within the first three weeks of the second semester." (Ibid., pp. 28-29).

The Board of Regents has adopted courses of study to be pursued by students in the School of Medicine and has divided the courses adopted into four years work. Most of the courses of study adopted to be instructed in the School of Medicine are courses involving a great deal of laboratory work, and this method of instruction, that is, to a great extent through laboratory experiment is the only practical method of teaching the courses adopted.

The laboratory and clinical and hospital facilities possessed by the School of Medicine of the University of Texas are of such capacity that, in the judgment of the Board of Regents and the faculty of the School of Medicine, said equipment and facilities are available to and can be used by but 100 first year students, and by the students promoted from that class and the resulting classes. Only 100 students are admitted to the School of Medicine as first year students, by reason of the limited facilities for the instruction of the courses adopted to be taught in the school.

Approximately 300 students who have complied with the entrance requirements pertaining to educational preparation, make application yearly for entrance into the School of Medicine as first year students. Only 100 of these are selected. Selection of those admitted is made on a basis of scholarship, by the Committee of Admission, the selection being based primarily upon the record of scholarship made by the applicants in the courses required to have been successfully completed as a prerequisite to entrance into the School of Medicine.

Respondents, in the exercise of their duties, have adopted courses of studies for the School of Medicine, and have divided the courses adopted according to their importance and according to the time required in their instruction, into "major" and "minor" courses, and have rated the "minor" courses according to their fractional value, considering a "major" course as a whole. The value of the minor courses are indicated, upon reference thereto herein.

Relator took the pre-medical course requisite to entrance into the School of Medicine, made application to the Medical School, and was admitted as a student therein for the school year 1930-31, and continued as a student until the close of the 1931-32 term.

During his first year in the School of Medicine, relator took the following courses and made the following grades therein:

| MAJOR SUBJECTS | First Term | Second Term | Average Grade |
|---|---|---|---|
| Anatomy | 71 | 70 | 70.5 |
| Bacteriology | | 76 | 76. |
| Biological Chemistry | 66 | | 66. |
| Histology | | 70 | 70. |
| Physiology | | 71 | 71. |
| Embryology | 71 | | 71. |
| MINOR SUBJECTS | | | |
| Medical Zoology (1/3) | | 74 | 74 |
| Personal Hygiene (1/6) | 74 | | 74 |

Relator failed to do satisfactory work in but one major subject, to-wit, Biological Chemistry, during his first year's work. He was permitted to take a conditional examination therein at the end of the first year, and made a grade of 59 on said conditional examination, and therefore failed to remove the conditional failure entered against him.

During the school year 1931-32 relator again was permitted to register as a student in the School of Medicine and under the rules regulating the course of instruction, was compelled to repeat and retake the course in Biological Chemistry. Relator was not able to take certain of the courses planned for instruction during the second year, because of his being required to repeat the course in Biological Chemistry. He was able to take, and did take, in connection with Biological Chemistry, the following courses during his second year in the School of Medicine and made the following grades:

| MAJOR SUBJECTS | First Term | Second Term | Average Grade |
|---|---|---|---|
| Anatomy | 76 | 68 | 72 |
| Physiology | 71 | | 71 |
| Biological Chemistry (Repeat, 1931-32) | 64 | | 64 |
| MINOR SUBJECTS | | | |
| Applied Anatomy (1/3) | 67 | | 67 |
| Minor Surgery (1/2) | | 70 | 70 |

Relator, at the end of the second year, was permitted to take a conditional examination in Biological Chemistry and made a grade of 54 thereon, and therefore failed to remove the conditional failure entered against him by reason of his having failed to make a grade of 70 or more on the examination given at the end of the first semester in that course.

It is further agreed that the Board of Regents has adopted for the government of the School of Medicine of the University,

the rules and regulations with reference to class standing and proficiency in work required that are above set out herein, and that said Board of Regents has delegated to the faculty of the School of Medicine, the duty of enforcing same.

Under the rule above quoted, to-wit, that if a student fail to do satisfactory work in two major subjects, with a general average of less than 70 per cent, he shall be automatically dropped from the rolls of the School of Medicine, as that rule is construed by the faculty of the School of Medicine, the relator was dropped from the rolls of the school at the end of the school year for 1931-32.

At the close of the 1931-32 term, relator was dismissed and since that time he has applied to the Board of Regents, to the President of the University of Texas and to the Dean of the School of Medicine for permission to re-enter the School of Medicine as a student, and that he be permitted to continue his studies as such student. The respondents have refused to re-admit him, under the rule above set out herein.

The faculty of the School of Medicine, since the adoption of the rule that if a student fail in two major courses with a general average of less than 70 per cent, he shall be dropped from the rolls of the School, has construed that rule to mean that if a student fail in two major courses with a general average of less than 70 per cent in all courses for the year, such student should be dropped from the rolls of the institution. *The faculty of that school, since the adoption of this rule, has also regarded each term of the anatomy courses taught each year as a major course.* (Italics ours).

The rule and the interpretation of the same has been in effect since 1919-20 and the same is clearly explained to each freshman class entering the school, at a convocation of that class on the day following the day of registration of first year students. This rule and the interpretation thereof by the faculty was explained to the freshman class of 1930-31, at a convocation of that class on the day following the day of their registration.

The School of Medicine at Galveston is a Class "A" school of medicine, and all such schools in the United States have a rule that a student dismissed, for any reason, from a Class "A" medical college will not be admitted as a student until he is reinstated.

As shown by the pleadings and by the agreed statement of facts, the relator, having complied with the educational pre-requisites to entrance into the school, was admitted as a stu-

dent for the session of 1930-31. Relator continued his studies in the school until the close of the 1931-32 session, when he was dropped from the rolls of the institution because of his failure to do satisfactory work in the courses of study prescribed.

Relator contends (1) that he did not fall within the rule regarding dismissal from the institution because of unsatisfactory work; and (2) that if he did, the rule as applied to relator is unreasonable and arbitrary. The rule referred to by relator as being unreasonable and arbitrary is found at page 28 of the University of Texas Bulletin No. 3205, Part IX, Medical Branch Catalogue Number, 1931-1932, and reads as follows:

"Students who fail to make satisfactory grades in three major subjects or their equivalent, or in two major subjects where the general average is less than 70, shall be automatically dropped from the roll and shall not be readmitted."

Article 2584, R. S., 1925, provides that the government of the University of Texas shall be vested in a Board of Regents, composed of nine persons. Article 2585, R. S., 1925, prescribes the powers of the Board of Regents in the following language:

"They shall establish the departments of a first-class university, determine the offices and professorships, appoint a president, who shall, if they think it advisable, also discharge the duties of a professor, appoint the professors and other officers, fix their respective salaries; and they shall enact such by-laws, rules and regulations as may be necessary for the successful management and government of the University; they shall have power to regulate the course of instruction and prescribe, by and with the advice of the professors, the books and authorities used in the several departments, and to confer such degrees and to grant such diplomas as are usually conferred and granted by universities."

Under the foregoing article, the Board of Regents is directed to adopt courses of study, with the consent of the faculty, to be taught in the University of Texas. By the same statute, the Board is also authorized to enact all such by-laws, rules and regulations as may be necessary to the government of the University. By and with the consent of the faculty the Board of Regents has enacted the rule above quoted; and further carrying out the mandate of the State, they have adopted courses of study to be pursued in the School of Medicine. Since the Board of Regents exercises delegated powers, its rules are of the same force as would be a like enactment of the Legislature and its official interpretation placed upon the rule so enacted becomes

a part of the rule. West Texas Compress, & Warehouse Co. v. Panhandle & S. F. Ry. Co., 15 S. W. (2d) 560.

■ Article 7, Section 10, of the Constitution of Texas, provides that the Legislature shall establish, organize and provide for the maintenance, support and direction of the University of the first class for the promotion of literature and the arts and sciences. Where the Legislature acting under a constitutional mandate, establishes a university, the Legislature may provide certain rules and regulations concerning the admission and exclusion of certain classes entitled to be admitted to all the privileges of a State university and instruction therein. The Legislature of this State not having provided who shall be admitted to the University and having delegated the power to make rules and regulations necessary to the government of the University, to the Board of Regents, they are invested with the power of determining what classes of persons shall be admitted to the University, provided that the rules and regulatios in that regard must be reasonable and not arbitrary. The authorities sustain certain general rules with regard to the government of institutions supported and maintained by the State. In 24 R. C. L., pp. 575-576, Section 24, the rule is announced as follows:

"The courts will not interfere with the exercise of discretion by school directors in matters confided by law to their judgment, unless there is a clear abuse of the discretion, or a violation of law. So the courts are usually disinclined to interfere with regulations adopted by school boards, and they will not consider whether the regulations are wise or expedient, but merely whether they are a reasonable exercise of the power and discretion of the board. Acting reasonably within the powers conferred, it is the province of the board of education to determine what things are detrimental to the successful management, good order, and discipline of the schools and the rules required to produce these conditions. The presumption is always in favor of the reasonableness and propriety of a rule or regulation duly made. The reasonableness of regulations is a question of law for the courts."

In 24 R. C. L., pp. 646-647, Section 105, the following rule is announced:

"The enjoyment of the right of attending the public schools is necessarily conditioned on compliance by pupils with the reasonable rules, regulations, and requirements of the school authorities, breaches of which may be punished by suspension or expulsion. Ordinarily the school authorities have the right to

define the offenses for which the punishment of exclusion from school may be imposed, and to determine whether the offense has been commited, the limitation on this authority being that it must in both respects be reasonably exercised. The power of expulsion given to the directors is not limited to cases of infraction of such rules as they may have theretofore adopted, but extends to cases where they may have become satisfied that the interests of the school require the expulsion of a pupil on account of his gross misbehavior, and the discretion vested in school authorities in this respect is very broad, but they will not be permitted to be arbitrary."

The case of State v. White, 82 Ind., 278, 42 Am. Rep., 496, involved the powers of the trustees and faculty to refuse admission or exclusion of students and in the course of the opinion it was held that the right of admission may not be enforced when there is not sufficient room in the University, and the court said:

"The admission of students in a public educational institution is one thing, and the government and control of students after they are admitted, and have become subject to the jurisdiction of the institution, is quite another thing.

"The first rests upon well established rule, either prescribed by law or sanctioned by usage, from which the right to admission is to be determined. The latter rests largely in the discretion of the officers in charge, the regulations prescribed for that purpose being subject to modification or change from time to time as supposed emergencies may arise."

In the case of Wilson v. Board of Education, 233 Ill., 464, 15 L. R. A. (N. S.) 1136, 84 N. E., 697, 13 Ann. Cas., 330, it was said:

"The power of the board of educatiton to control and manage the schools and to adopt rules and regulations necessary for that purpose is ample and full. The rules and by-laws necessary to a proper conduct and management of the schools are, and must necessarily be, left to the discretion of the board, and its acts will not be interfered with nor set aside by the courts unless there is a clear abuse of the power and discretion conferred. Acting reasonably within the powers conferred, it is the province of the board of education to determine what things are detrimental to the successful management, good order and discipline of the schools and the rules required to produce these conditions."

The case of University of Mississippi v. Waugh, 105 Miss., 623, 62 So., 827, involved the powers of the Board of Trustees

of that University to exclude certain students from that institution. In the course of the opinion, the Supreme Court of Mississippi held:

"* * * The fourteenth amendment to the Constitution of the United States was never intended to act as an accomplice to any young man who wanted to take advantage of the gratuitous advantages offered the youths to obtain an education, and yet refuse to obey and submit to the disciplinary regulations enacted by the Legislature for the welfare of the institutions of learning. The right to attend the educational institutions of the state is not a natural right. It is a gift of civilization, a benefaction of the law. If a person seeks to become a beneficiary of this gift, he must submit to such conditions as the law imposes as a condition precedent to this right. The act in question is not class legislation. It is quite the reverse, and seeks to destroy the possibility of the existence of any class at the educational institutions. No state or federal Constitution is violated by this act in any way. Complainant is not deprived of any constitutional right, unless complainant can be said to have a constitutional right to breach the discipline of the school and set at naught the laws of the state." The above case was appealed to the Supreme Court of the United States and the opinion of the Supreme Court of Mississippi was sustained. 237 U. S., 595.

For a general discussion of this subject in addition to the authorities above cited, we refer to the following authorities: Splawn v. Woodward, 287 S. W., 677; Zucht v. San Antonio School Board (Texas Civ. App.), 170 S. W., 840; Anthony v. Syracuse University, 224 App. Div., 487, 231 N. Y. Sup., 439, 223 N. Y. Sup., 796; Pugsley v. Sellmeyer, 158 Ark., 247, 30 A. L. R., 1212, 250 S. W., 538; West v. Miami University, 41 Ohio App., 367, 181 N. E., 144; Baltimore University v. Colton, 98 Md., 623, 57 Atl., 14, 64 L. R. A., 108; Cooley, Constitutional Limitations (8 Ed.), 345, 355; Corpus Juris, Volume 56, p. 807; Corpus Juris, Volume 11, p. 997, sec. 31; Tanton v. McKenney, 226 Mich., 545, 33 A. L. R., 1175, 197 N. W., 510; 27 R. C. L., p. 140; 27 R. C. L., p. 144.

■ Relator complains that the rule is unreasonable and that he is barred from re-admission into the School of Medicine. The facts show that the facilities of the school can accommodate but 100 first year students and that the facilities are adequate for the accommodations of only those persons who are promoted from that class to advancement into the other classes. The facilities are not adequate for all who having taken the re-

quired pre-medical course wish to become students as shown by the fact that approximately 300 students make application for admission to the School of Medicine as first year students annually. The selection of the 100 students admitted annually to the school is made primarily on the record of scholarship made in the courses taken as pre-medical work.

A student who is admitted to the University receives the privilege of attending that institution subject to the reasonable rules and regulations promulgated by the Board of Regents and existing at the time of his entrance into the school. The educational facilities of State supported institutions of higher learning are at the disposal of the average student engaged in a particular field of study and a standard of excellence which the average student in a particular field of study is to satisfy is not an unreasonable regulation. It follows that a student who is unable to maintain and meet the standard of proficiency required is not entitled to continue to attend a State supported institution, provided the standard required is not unreasonable and arbitrary. A rule which refused re-admission to a student who has failed to meet a standard of proficiency which the average student in the particular field of study is able to satisfy, is not unreasonable where the facilities of the school are inadequate to accommodate all who are eligible to apply therefor.

It is undisputed that no complaint was made as to the conduct of relator while a student; that there was no ill feeling on the part of the Board of Regents and the faculty of the University toward relator and that the only reason for his dismissal as such student was on the grounds herein stated. This record affirmatively establishes that the relator was selected from the 300 applicants for entrance into the school and was admitted as a student for the year 1930-31. It is undisputed that he failed to do satisfactory work in one major subject during his first year's work; that he was permitted to take a conditional examination therein at the end of the first year and made a grade of 59 on the conditional examination and therefore failed to remove the conditional failure entered against him. Furthermore, during the school year 1931-32 relator was again permitted to register as a student and under the rules was compelled to repeat and retake the course in Biological Chemistry. By reason of his previous failure he was not able to take certain of the courses planned for instruction during the second year. At the end of the second year relator was permitted to take a conditional examination in Biological Chemistry and made a grade of 54 thereon and therefore failed to remove the

conditional failure entered against him by reason of his having failed to make a grade of 70 or more in the examination given at the end of the first semester in that course. Therefore, under the rule, the relator was dropped from the rolls of the school at the end of the school year 1931-32. He does not deny that he was aware of the interpretation of the rule herein described.

■ The Legislature of this State having lodged the power with the Board of Regents to enact rules and regulations as may be necessary for the successful management and government of the University, they shall have power to adopt such rules and to regulate the course of instruction and prescribe, by and with the advice of the faculty, the books and authorities used in the several departments. That authority rests with the Board of Regents and the faculty as provided for by statute and if a change or modification is desired in the rules and regulations, it is a matter for the consideration of the Legislature. The courts will not interfere therewith in the absence of a clear showing that they have acted arbitrarily or have abused the authority vested in them. The great weight of authority sustain this doctrine. State ex rel Ingersoll v. Clapp et al., 81 Mont., 200, 263 Pac., 433; John S. Stetson University v. Hunt, 88 Fla., 510, 102 So., 637; Woods v. Simpson, 146 Md., 547, 126 Atl., 882, 39 A. L. R., 1016; Kentucky Military Institute v. Bramblet, 158 Ky., 205, 164 S. W., 808; 11 C. J., p. 997, sec. 31; 24 R. C. L., p. 575, sec. 24.

We therefore recommend that relator's application for mandamus be refused.

The opinion of the Commission of Appeals is adopted, and the mandamus refused.

C. M. CURETON, Chief Justice.