

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

December 30, 1966

Hon. Frank C. Erwin      Opinion No. C-794
Chairman
Board of Regents      Re: Whether the Board of Regents
University of Texas      of the University of Texas
Austin, Texas      are required to permit
Doctors of Osteopathy who
are licensed to practice
medicine to participate in
postgraduate courses at
medical institutions of the
Dear Mr. Erwin:      University of Texas.

You request an opinion of this office which is
set out as follows:

"In view of the provisions of Section 31,
Article XVI of the Constitution of Texas, and
the equal protection clause of the Fourteenth
Amendment of the Constitution of the United
States, is the Board of Regents of the University
of Texas required to permit Doctors of Osteopathy
who are licensed to practice medicine to partici-
pate in the continuing education programs of the
medical institutions of The University of Texas
System?"

Your letter of request reflects that the prereq-
uisites now applicable to the postgraduate medical programs
at those institutions governed by the board of regents
require that participants hold the degree of Doctor of
Medicine. This of necessity precludes participation by
those practitioners holding the degree of Doctor of
Osteopathy rather than Doctor of Medicine who otherwise
meet the prerequisites for these programs. Other aspects
of the prerequisites are not inquired about and will not
enter into our consideration.

The government of the University of Texas is
vested in a board of regents. Art. 2584, V.C.S. In
Article 2585 of Vernon's Civil Statutes the legislature
has prescribed the powers of the board of regents:

"They shall establish the departments of

-3815-

a first-class university, determine the offices and professorships, appoint a president, who shall, if they think it advisable, also discharge the duties of a professor, appoint the professors and other officers, fix their respective salaries; and they shall enact such by-laws, rules and regulations as may be necessary for the successful management and government of the University; they shall have power to regulate the course of instruction and prescribe, by and with the advice of the professors, the books and authorities used in the several departments, and to confer such degrees and to grant such diplomas as are usually conferred and granted by universities."

The powers invested in the board of regents necessarily involve the exercise of wide discretion in determing what class of persons shall be admitted. In Foley v. Benedict, 122 Tex. 193, 55 S.W.2d 805 (1932) a rule adopted by the board of regents was challenged as being arbitrary and unreasonable. In sustaining the validity of the rule, the court recognized the broad powers of the board of regents in the government of the University of Texas.

"Article 7, § 10, of the Constitution of Texas, provides that the Legislature shall establish, organize, and provide for the maintenance, support, and direction of the University of the first class for the promotion of literature and the arts and sciences. Where the Legislature, acting under a constitutional mandate, establishes a university, the Legislature may provide certain rules and regulations concerning the admission and exclusion of certain classes entitled to be admitted to all the privileges of a state university, and instruction therein. The Legislature of this state not having provided who shall be admitted to the University, and having delegated the power to make rules and regulations necessary to the government of the University, to the board of regents, they are invested with the power of determining what classes of persons shall be admitted to the University, provided that the rules and regulations in that regard must be reasonable and not arbitrary. The authorities sus-

tain certain general rules with regard to
the government of institutions supported and
maintained by the state. In 24 R.C.L. pp.
575-576, § 24, the rule is announced as fol-
lows: 'The courts will not interfere with the
exercise of discretion by school directors in
matters confided by law to their judgment,
unless there is a clear abuse of the discre-
tion, or a violation of law. So the courts
are usually disinclined to interfere with reg-
ulations adopted by school boards, and they
will not consider whether the regulations are
wise or expedient, but merely whether they
are a reasonable exercise of the power and
discretion of the board. Acting reasonably
within the powers conferred, it is the prov-
ince of the board of education to determine
what things are detrimental to the success-
ful management, good order, and discipline
of the schools and the rules required to pro-
duce these conditions. The presumption is
always in favor of the reasonableness and
propriety of a rule or regulation duly made.
The reasonableness of regulations is a ques-
tion of law for the courts.'" 55 S.W.2d 805, 808.

Although Hyman v. City of Galveston, 273 U.S. 414,
47 S.Ct. 363, 71 L.Ed. 714 (1927) and Duson v. Poage, 318
S.W.2d 89 (Tex.Civ.App. 1958, error ref. n.r.e.) dealt with
the validity of rules which denied to doctors of osteopathy
the privileges of staff membership of a county hospital,
the powers of the hospital boards with respect to the manage-
ment and control of the hospitals in question are analogous
to the powers of government invested in the board of regents.
In both cited cases, the rules were challenged as being
contrary to Section 31 of Article XVI of the Constitution
of the State of Texas and the Fourteenth Amendment to the
Constitution of the United States. Section 31 of Article
XVI of the Constitution of the State of Texas reads as
follows:

"The Legislature may pass laws prescribing
the qualifications of practitioners of medicine
in this State, and to punish persons for mal-
practice, but no preference shall ever be

given by law to any school of medicine." [1]

The following statements by the court in Hyman v. City of Galveston, 273 U.S. 414, 416-418, 47 S.Ct. 363, 364, 71 L.Ed. 714, 717, 718 (1927) are particularly apropos:

"However extensive that protection /Fourteenth Amendment7 may be in other situations, it cannot we think, be said that all licensed physicians have a constitutional right to practice their profession in a hospital maintained by a state or political subdivision, the use of which is reserved for purposes of medical instruction. . . .

"But it is argued that if some physicians are admitted to practice in the hospital all must be or there is a denial of the equal protection of the laws. Even assuming that the arbitrary exclusion of some physicians would have that legal consequence, in the circumstances of this case, the selection complained of was based upon a classification not arbitrary or unreasonable on its face. . . . We cannot say that a regulation excluding from the conduct of a hospital the devotees of some of the numerous systems or methods of treating diseases authorized to practice in Texas, is unreasonable or arbitrary. In the management of a hospital, quite apart from its use for educational purposes, some choice in methods of treatment would seem inevitable, and a selection based upon a classification having some basis in the exercise

---

[1]    The express limitation that "no preference shall ever be given by law to any schools of medicine" applies only to the power of the legislature to enact "laws prescribing the qualifications of practitioners of medicine" and statutes "to punish persons for malpractice." It does not extend to legislation dealing with other subjects. Dowdell v. McBride, 92 Tex. 240, 47 S.W. 524 (1898). The term "schools of medicine" has reference to the system or method which the medical practitioner employs in the treatment of disease. Ex parte Halsted, 147 Tex.Crim. 453, 182 S.W.2d 479 (1944).

of the judgment of the state board whose action
is challenged is not a denial of the equal pro-
tection of the laws. . . .

"The validity of the action of the board
under the Texas Constitution /Sec. 31, Art. XVI/
is also before us. . . .

"The limitation of the provision is
obviously directed to the qualifications of
those to be admitted to the practice of their
profession in the state and has nothing to do
with the qualifications of those who are to be
allowed to practice in a state hospital or to
participate in an educational enterprise con-
ducted by the state. . . ."

In Duson v. Poage, 318 S.W.2d 89 (Tex.Civ.App.
1958, error ref. n.r.e.) a rule of a county hospital was
attacked upon the same basis as the rule in the Hyman case.
In upholding the authority of the hospital board to enact
a rule which would exclude doctors of osteopathy from the
hospital staff, the court quoted at length from the Hyman
case and stated at page 94-95:

"While the holding of that Court is not
binding on us insofar as it interprets the
meaning of the state constitution, the
decision is highly persuasive, and we happen
to be in accord with its interpretation.

"The holding is supported by the following
authorities from other states:  Newton v. Board
of County Com'rs of Weld County, 86 Colo. 446,
282 P. 1068; Richardson v. City of Miami, 144
Fla. 294, 198 So. 51; and Green v. City of St.

Hon. Frank C. Erwin, page 6, (C-794)


Petersburg, 154 Fla. 339, 17 So.2d 517." 2

The court further observed at pages 96-97:

"/The legislature/ wisely left to the
Board of Managers very broad powers to be
employed in the operation of the hospital. . . .

"This enjoined upon the Board the duty
of adopting such rules as are reasonably
necessary to carry out the purpose of the
Act.  The purpose of the Act was to enable
a county to establish a hospital and operate
it in a manner that would best serve the
greatest number in the community. . . .  One
of the age-old problems is the conflict between
osteopaths and allopaths.  If in a given com-
munity the hospital can best be operated by
the exclusion of osteopaths, we find no inhibi-
tion in law to such exclusion.

"While the Board cannot act arbitrarily,
the mere fact that we, had we been in their
position, might not have taken the same action
as did they, does not make their action arbitrary
and unreasonable."

A rule which requires that participants in post-
graduate medical programs of the University of Texas hold
the degree of Doctor of Medicine does not relate to the
qualifications for the practice of medicine within this

---

2 The most recent cases reaching this result:  Taylor
v. Horn, 189 So.2d 198 (Fla. App. 1966); Foote v. Community
Hospital of Beloit, 195 Kan. 385, 405 P.2d 423 (1965); Walling-
ton v. Zinn, 146 W.Va. 147, 118 S.E.2d 526 (1961).  Contra
Schneir v. Englewood Hosp. Assoc., 91 N.J. Super. 527, 221
A.2d 559 (1966) and Greisman v. Newcomb Hospital, 40 N.J. 389,
192 A.2d 817 (1963) where the courts held that denial of ad-
mission to hospital staff must be based upon qualification
of applicant, not solely on fact that applicant was an
osteopath.  Compare Blende v. Maricopa County Medical Soc.,
96 Ariz. 240, 393 P.2d 926 (1964) and Falcone v. Middlesex
County Medical Soc., 34 N.J. 582, 170 A.2d 791 (1961) where
courts held that county medical society could not exclude
practitioner from membership solely because of being an
osteopath where membership in society was necessary pre-
requisite to admission to hospital staff.

state. Therefore the rule is not within the prohibition of Section 31 of Article XVI of the Constitution of the State of Texas.

In considering whether those holding the degree of Doctor of Osteopathy are denied the equal protection of the law, we cannot concern ourselves with the wisdom of the policy which prompted the adoption of the rule, but merely with whether the rule is a reasonable exercise of the power and discretion of the board of regents.

The legislature created the board of regents and confided to its management the University of Texas. It is within the province of their powers to determine those things which are inimical to a well ordered and disciplined operation of the University of Texas and its schools. This determination necessarily requires the exercise of discretion, as does the promulgation of rules for the achievement of the desired conditions.

The Fourteenth Amendment to the Constitution of the United States does not guarantee to all the right to attend an educational facility maintained by the state. The right of attendance is a privilege extended by the state to those who meet the conditions imposed. University of Mississippi v. Waugh, 105 Miss. 623, 62 So. 827 (1913), affirmed 237 U.S. 589, 35 S.Ct. 720, 59 L.Ed. 1131 (1915). The rule in question operates to exclude members of a defined classification; i.e., those who do not hold the degree of Doctor of Medicine. We are unable to say that this classification is unreasonable or arbitrary as a matter of law. In the absence of facts to the contrary, we must presume that the board of regents acted with due regard to the high trust reposed in them by law. Foley v. Benedict, 122 Tex. 193, 55 S.W.2d 805 (1932).

The principles of law pronounced in Hyman v. City of Galveston, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714 (1927) and Duson v. Poage, 318 S.W.2d 89 (Tex.Civ.App. 1958, error ref. n.r.e.), apply with equal force to the rule here inquired about. In concluding that the present rule of the board of regents does not transcend the constitutional rights of those whom it excludes we have been guided solely by those principles. It being within the sole discretion of the board of regents to determine what rules are necessary to the successful management and government of the University of Texas and its schools,

the rule must stand. In sustaining the validity of the present rule, we do not hold that the board of regents may not allow persons holding the degree of Doctor of Osteopathy rather than Doctor of Medicine to participate in postgraduate medical programs of the University of Texas, but that the participation of such persons lies within the sole discretion of the board of regents.

## S U M M A R Y

Under the provisions of Article 2585, V.C.S., the Board of Regents of the University of Texas is authorized to enact such rules and regulations as may be necessary to the government of the University of Texas. In the exercise of this authority, it is within the sole discretion of the Board to establish by rule the prerequisites necessary for participation in postgraduate medical programs offered at its medical institutions so as to either include or exclude participation by persons holding the degree of Doctor of Osteopathy. The present rule of the Board which requires that participants in such programs hold a degree of Doctor of Medicine and thereby excludes persons holding the degree of Doctor of Osteopathy is not prohibited by Section 31, Article XVI, Texas Constitution or XIV Amendment, U.S. Constitution.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By: W. O. Shultz
W. O. Shultz
Assistant Attorney General

WOS:sck

APPROVED:
OPINION COMMITTEE

Ralph Rash, Chairman
James C. McCoy, Harold Kennedy
Robert Flowers
APPROVED FOR THE ATTORNEY GENERAL
BY: T. B. Wright