

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

June 19, 1970

Honorable Manuel DeBusk,
    Chairman
Coordinating Board
Texas College and University System
Sam Houston State Office Building
Austin, Texas  78701

Opinion No.  M-652

Re: Whether the Coordinating Board, Texas College and University System, has the authority to determine and fix maximum capacity enrollments in all Texas public senior colleges and universities, and related question.

Dear Mr. DeBusk:

In your recent letter to this office you have requested our opinion upon the following questions:

"We would like to have your official opinion as to whether or not the Coordinating Board, Texas College and University System, has the authority to determine and fix maximum capacity enrollments in all Texas public senior colleges and universities.

"If you determine that the Coordinating Board, Texas College and University System, has this authority, what enforcement authority or procedures does the Coordinating Board have by which it can enforce such annual maximum capacity enrollments?"

The Coordinating Board was created by Article 2919e-2, Vernon's Civil Statutes.  Its powers and responsibilities are dependent upon the provisions of that act.  We think it advisable at the outset to set forth in full several of the phrases and terms defined in Section 2 of Article 2919e-2 in order to delineate properly the scope of the questions presented:

"(c) 'General academic teaching institution' means The University of Texas, Main University; Texas Western College of The University of Texas; Texas A&M University,

-3123-

Main University; Arlington State College;
Tarleton State College; Prairie View A. and
M. College; Texas Maritime Academy; Texas
Technological College; North Texas State Uni-
versity; Lamar State College of Technology;
Texas College of Arts and Industries; Texas
Woman's University; Texas Southern University;
Midwestern University; University of Houston;
Pan American College; East Texas State College;
Sam Houston State Teachers College; Southwest
Texas State College; West Texas State University;
Stephen F. Austin State College; Sul Ross State
College; Angelo State College; and any other
college, university or institution so classified
as provided in this Act.

"(d) 'Public senior college or university'
means a general academic teaching institution as
defined herein.

". . .

"(g) 'Institution of higher education'
means any public junior college, public senior
college or university, medical or dental unit
or other agency of higher education as herein
defined.

"(h) 'Governing board' means the body
charged with policy direction of any public
junior college, public senior college or
university, medical or dental unit, or other
agency of higher education, including but not
limited to boards of directors, boards of
regents, boards of trustees, and independent
school district boards insofar as they are
charged with policy direction of a public
junior college."

Without enumeration, we point out that each of the
public senior colleges or universities has been placed under
the management and control of a governing board by various
legislative enactments. These governing boards have broad
and general power and authority to control and manage these
colleges and universities, and to promulgate such rules and
regulations as are deemed to be necessary for their efficient
administration. Foley v. Benedict, 122 Tex. 193, 55 S.W.2d

805 (1932); <u>Cornette v. Aldridge</u>, 408 S.W.2d 935 (Tex.Civ. App. 1966, mandamus overruled). The scope of the authority of the Coordinating Board and the role which it is intended to perform in the scheme which the Legislature has provided for the management and control of public senior colleges and universities must be determined from the provisions of Article 2919e-2.

Section 1 of Article 2919e-2 states that the purpose of the act is:

> ". . . to establish in the field of public higher education in the State of Texas an agency to provide leadership and coordination for the Texas higher education system, institutions and governing boards, to the end that the State of Texas may achieve excellence for college education of its youth through the efficient and effective utilization and concentration of all available resources and the elimination of costly duplication in program offerings, faculties and physical plants."

The extent to which the Coordinating Board may act in carrying out this purpose has been specified by the Legislature in Section 3 of Article 2919e-2 which reads as follows:

> "There is hereby established the Coordinating Board, Texas College and University System which shall have its office in Austin, Texas. <u>It shall perform only such functions as are herein enumerated and as the Legislature may assign to it. Functions vested in the governing boards of the respective institutions of higher education, not specifically delegated to the Board, shall be performed by such boards.</u> The coordinating functions and other duties delegated to the Board in this Act shall apply to all public institutions of higher education." (Emphasis added.)

From the language of this section it is clear that (1) the Coordinating Board may perform only those functions enumerated in the act, and (2) the authority of governing boards of institutions of higher education are supplanted only to the extent that there has been a specific delegation of such power to the Coordinating Board. We take this as a definitive declaration by the Legislature that the Coordinating

Board has no implied powers or functions.  By this statement
we do not mean that the Coordinating Board does not have im-
plied authority to do all things necessary to carry out ef-
fectively a power or function specifically delegated to it
in the act, for certainly it has.  Terrell v. Sparks, 104
Tex. 191, 135 S.W. 519 (1911).  But, by the language of
Section 3, the Legislature has stated, in effect, that the
maxim of expressio unius est exclusio alterius shall apply
to limit the functions and duties of the Coordinating Board
to those specifically enumerated in the act.

It would serve no purpose other than to unduly
lengthen this opinion to attempt to summarize or allude to the
many powers and functions specifically delegated to the
Coordinating Board by Article 2919e-2.  Suffice it to say that
many of these functions are advisory only and are directed
toward the formulation of plans and policies for the considera-
tion of the various governing boards of the institutions of
higher education, and it is not mandatory that such plans and
policies be adopted by the governing boards.  On the other hand,
a number of the functions of the Coordinating Board involve
determinations which are mandatory and must be followed by
the governing boards.

We have carefully considered all provisions of
Article 2919e-2 and are unable to find within the enumerated
powers and functions of the Coordinating Board authority to fix
maximum enrollments at all public senior colleges and universities.
Indeed, Section 15 expresses an intention on the part of the
Legislature that every effort be made to ". . . assure efficient
use of construction funds and the orderly development of
physical plants to accommodate projected college student
enrollments . . . ."  (Emphasis added.)  To this end the
Board is directed, among other things, to devise formulas for
space utilization, methods to assure maximum daily and year-
round use of facilities.  While paragraph 3 of Section 15 does
direct the Board to "Consider plans for selective standards
of admission when institutions of higher education approach
capacity enrollment", we do not construe this language to
authorize the fixing of a numerical maximum, but rather that
a plan may be "considered" whereby a person desiring to enroll
must first meet a prescribed set of standards.  While the
standards would necessarily preclude those from enrollment
who failed to meet their measure, nonetheless they would not
limit enrollment to a specific number of students.

In any event, we do not construe Article 2919e-2

as making mandatory that a governing board implement any plan devised by the Coordinating Board pursuant to Section 15(3), but that such plans are advisory only.  No language is therein contained for the execution of a plan.  As further evidence that the Legislature did not intend that enrollments be fixed at a numerical maximum, Section 16(2) directs the Coordinating Board to "Recommend to the Governor and the Legislative Budget Board supplemental contingent appropriations <u>to provide for increases in enrollment at the institutions of higher education."</u> (Emphasis added.)

You are therefore advised that, in our opinion, your first question must be answered in the negative.  No answer is required to your second question.

### S U M M A R Y

Under the express language of Section 3 of Article 2919e-2, V.C.S., the powers and functions of the Coordinating Board, Texas College and University System, are limited to those specifically enumerated in the article. This statute contains no provision which would authorize the Board to fix the numerical maximum enrollments for all public senior colleges and universities; however, the Coordinating Board may "consider" a plan whereby a person desiring to enroll must first meet a prescribed set of standards.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by W. O. Shultz
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

J. C. Davis
Jack Goodman
Ralph Rash
Rick P. Fisher
Jack Dillard

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant