Mr. Louis J. Rodriguez President Midwestern State University Office of the President Wichita Falls, Texas 76308
Re: Legality of home run contract held by state university
Dear Mr. Rodriguez:
You have requested our opinion concerning the legality of a proposed contest to be conducted by Midwestern State University (hereinafter MSU) in cooperation with the muscular dystrophy charity in Wichita Falls, Texas. Your proposed `Home Run Hitting Contest' would offer contestants a chance to win a $500 United States Savings Bond based on how many of five baseballs each contestant can hit over the outfield fence in your baseball field. Each contestant must pay an entry fee of at least $10.00. One-half of the proceeds would go to the MSU baseball program and one-half to muscular dystrophy.
We understand that your main concern is whether the proposed contest is permissible under the state's gambling laws. See Tex. Const. art. III, §47; Penal Code §§ 47.01 et seq. Before reaching this question, however, we must address a threshold question: Is Midwestern State University authorized to cooperate with a private charity in conducting a contest on university property for the purpose of generating revenue, where a prize will be offered, and where one-half of the proceeds will be donated to that charity?
Midwestern State University is a state-supported institution of higher education. As such, it derives its legal powers and authority from the Texas legislature. The statutes which specifically apply to MSU are sections 103.01 et seq. of the Texas Education Code. Those which are generally applicable to institutions of higher education, including MSU, are in various other places in the code. See, e.g., Educ. Code §§ 51.101
et seq.; 51.201 et seq.; 55.01 et seq. Compare Educ. Code §§ 51.001 et seq. (inapplicable to MSU).
The board of regents of MSU possesses some measure of discretionary authority. For example, it may promulgate rules for the safety and welfare of students, employees, and property. Educ. Code § 51.202. It may issue revenue bonds for the purposes specified in section 55.13 of the Education Code. It may accept donations, gifts, and endowments for the university under the conditions set forth in section 103.08 of the code. Its authority is, however, not nearly as broad as that which has been conferred upon boards of regents of other state institutions of higher education i.e., the University of Texas System. See Educ. Code § 65.31; Foley v Benedict, 55 S.W.2d 805 (Tex. 1932); Attorney General OpinionMW-373 (1981). There is no counterpart, for example, to section 65.31 of the Education Code, which authorizes the board of regents of the University of Texas System to `promulgate . . . rules . . . for the operation, control, and management of the university system and the component institutions thereof as the board may deem either necessary or desirable,' applicable to MSU.
You have cited no statute which explicitly or impliedly authorizes MSU to cooperate with a private charity to conduct a contest for the purposes and under the conditions which you have described. Neither has our own research disclosed any such express or implied authority. We must therefore conclude that the university is not authorized to conduct the proposed contest. Our conclusion renders it unnecessary for us to consider the legality of this contest under the gambling laws.
 SUMMARY
Midwestern State University lacks statutory authority to cooperate with a private charity in conducting a contest on university property for the purpose of generating revenue, where a prize will be offered, and where one-half of the proceeds will be donated to that charity.
Very truly yours,
 Mark White Attorney General of Texas
 John W. Fainter, Jr. First Assistant Attorney General
 Richard E. Gray III Executive Assistant Attorney General
 Prepared by Jon Bible Assistant Attorney General