

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

September 2, 1997

Mr. Kenneth H. Ashworth
Commissioner
Texas Higher Education Coordinating Board
P.O. Box 12788
Austin, Texas 78711

Opinion No. DM-450

Re: Whether a community college district may charge and collect from its students a mandatory technology fee, and related questions (RQ-929)

Dear Mr. Ashworth:

As you know, an institution of higher education may collect from students attending the institution only those fees or charges permitted by law.[1] On behalf of the Dallas County Community College District (the "district"), you ask several questions regarding the district's authority to charge and collect from its students a "mandatory technology fee." You tell us that the proceeds from the fee would be used to purchase computer hardware, software, and support services "for the direct use and benefit of students." Your first question is whether state law permits the district to collect such a fee.

You suggest that the district's technology fee is permitted by sections 54.503 and 54.504 of the Education Code. While other provisions of the Education Code authorize fees for institutions of higher education generally[2] and for particular institutions,[3] we will limit our discussion to the two provisions about which you ask.

Section 54.503 of the Education Code allows the governing board of an institution of higher education[4] to charge and collect "student services fees" from students registered at the institution to

---

[1]Educ. Code § 54.003.

[2]See, e.g., Educ. Code §§ 54.501(authorizing laboratory fees); .505 (authorizing vehicle registration and parking fees); .515 (authorizing student union fees).

[3]See, e.g., id. § 54.5061 (authorizing the University of Houston System to charge and collect student services fees); see generally Educ. Code ch. 54, subch. E. We know of no fee statute applicable only to the Dallas County Community College District.

[4]For the purposes of Education Code chapter 54, relating to tuition and fees, "institution of higher education" has the meaning assigned to it by section 61.003 of the Education Code, including a public junior college to the extent possible. Educ. Code § 54.001. Section 61.003 of the Education Code defines "institution of higher education" to include "any . . . public junior college." Id. § 61.003(8). A community college is the same thing as a public junior college. See id. § 130.005.

cover the cost of student services.[5] All money collected as student services fees must be reserved and accounted for in an account or accounts kept separate from the educational and general funds of the institution.[6] The money may be used only for the support of student services.[7] The institution must establish a separate budget for the services financed by the fees, and a copy of the budget must be filed annually with the coordinating board, the governor, the legislative budget board, and the state library.[8]

Section 54.503 defines "student services" as:

> activities which are separate and apart from the regularly scheduled academic functions of the institution and directly involve or benefit students, including textbook rentals, recreational activities, health and hospital services, medical services, intramural and intercollegiate athletics, artists and lecture series, cultural entertainment series, debating and oratorical activities, student publications, student government, the student fee advisory committee, student transportation services other than services under Sections 54.504, 54.511, 54.512, and 54.513 of this code,[9] and any other student activities and services specifically authorized and approved by the governing board of the institution of higher education. The term does not include services for which a fee is charged under another section of this code.[10]

Thus section 54.503 permits an institution of higher education to charge a student services fee approved by the institution's governing board if the services funded by the fee "are separate and apart from the regularly scheduled academic functions of the institution" and "directly involve or benefit students." If these statutory conditions are satisfied, the district's mandatory technology fee is a permissible student services fee under section 54.503.

Whether a particular service falls within section 54.503's definition of "student services" is normally a determination to be made in the first instance by the institution's governing board, subject

---

[5]*Id.* § 54.503(b).

[6]*Id.* § 54.503(d). Funds to be accounted for as educational and general funds are described in Education Code section 51.009(c).

[7]*Id.*

[8]*Id.*

[9]Section 54.504 of the Education Code provides for the collection of "incidental fees," which are discussed later in this opinion. Sections 54.511, 54.512, and 54.513 provide for student services fees at Southwest Texas State University, The University of Texas at Arlington, and The University of Texas at Austin, respectively. (Footnote added.)

[10]Educ. Code § 54.503(a)(1) (footnote added).

ultimately to judicial review.[11] You tell us that the district's technology fee is used to fund services "for the direct use and benefit of students," but you do not tell us whether the services are "separate and apart from the regularly scheduled academic functions" of the district's colleges. These factual determinations, in any event, are best made not by this office but by the district's board of trustees.

We note that a student services fee imposed under section 54.503 may be either compulsory (charged to all students enrolled at the institution) or voluntary (charged only to those students who make use of the service for which the fee is established).[12] Your letter states that the district's technology fee is "mandatory." Additionally, a brief submitted to this office on behalf of certain students of the district states that the fee is imposed on all students enrolled for college credits. This information leads us to believe that the technology fee, if it is a student services fee, falls within the section 54.503's definition of a compulsory fee. Special statutory provisions apply to the imposition of compulsory fees.[13] We advise the district to examine those provisions in connection with the imposition of any compulsory student services fee.

Next, you suggest on behalf of the district that the technology fee is authorized by section 54.504 of the Education Code. Section 54.504 allows the governing board of an institution of higher education to fix "incidental fees" which may be collected from current and prospective students.[14] The rate of an incidental fee must reasonably reflect the actual cost to the institution of the materials or services for which the fee is collected.[15] The institution's governing board may, but is not required to, consult with a student fee advisory committee in fixing the rate of an incidental fee.[16]

Section 54.504 defines the term "incidental fees" only by example:

> In this section, "incidental fees" includes, without limitation, such fees as
> late registration fees, library fines, microfilming fees, thesis or doctoral

---

[11]*See Foley v. Benedict*, 55 S.W.2d 805, 808 (Tex. 1932) (holding that discretionary decisions by governing board may be set aside on grounds they are arbitrary or unreasonable); Letter Advisory Opinion No. 50 (1973) (concluding that whether service is of direct interest or benefit to students requires determination of facts that cannot be made in opinion process).

[12]Educ. Code §§ 54.503(a)(3) (defining "voluntary fee"); .503(a)(2) (defining "compulsory fee"); .503(b) (authorizing institutions to collect compulsory and voluntary student services fees).

[13]*See id.* §§ 54.503(b) (setting cap of $150 per semester or summer session for total of all compulsory student services fees collected from student at institution other than The University of Texas at Austin); (e) (permitting governing board to waive compulsory fee for student because of undue financial hardship); (f) (requiring fee increase of more than 10 percent from previous academic year to be approved by majority vote of student election or student government); .5031 (establishing student fee advisory committee to advise institution on compulsory fees).

[14]*Id.* § 54.504(a).

[15]*Id.*

[16]*Id.* If a student fee advisory committee does not exist at the institution, the governing board may establish one.

> manuscript reproduction or filing fees, bad check charges, application processing fees, and laboratory breakage charges, but does not include a fee for which a governing board makes a charge under the authority of any other provision of law.[17]

As is the case for student services fees, whether a particular fee falls within the scope of the incidental fees statute is a determination to be made by the institution's governing board in the first instance, subject to review by a court. Among the factors a court would consider in determining the scope of section 54.504 are the circumstances under which the statute was enacted, the object sought to be obtained by it, and the statute's legislative history.[18] The definition of incidental fees was the subject of considerable discussion in the course of the debate on Senate Bill 216, section 54.504's enacting legislation, in the Sixty-ninth Texas Legislature. Here, we examine the bill's legislative history in order to provide you and the district with some guidance in determining what constitutes an incidental fee.

Prior to the enactment of Senate Bill 216, only certain institutions of higher education were expressly authorized by statute to impose incidental fees.[19] Senate Bill 216 was introduced as an incidental fee bill for Texas Tech University.[20] The Senate Education Committee adopted a substitute bill extending the fee authority to all institutions, some of which, like Texas Tech, had been imposing incidental fees without authority.[21]

---

[17]*Id.* § 54.504(c).

[18]*See* Code Construction Act, Gov't Code § 311.023.

[19]These institutions included The University of Texas Pan-American, The University of Houston, and The University of Texas System. *See, e.g.,* Act of May 28, 1983, 68th Leg., R.S., ch. 993, § 1, 1983 Tex. Gen. Laws 5387-88 (formerly codified at Education Code § 65.44) (authorizing The University of Texas System to collect incidental fees) (*repealed by* Act of May 16, 1985, 69th Leg., R.S., ch. 292, 1985 Tex. Gen. Laws 1345); *see also* Hearings on S.B. 216 Before the Senate Educ. Comm., 69th Leg., R.S. (Feb. 6, 1985) (testimony of Senator Montford, sponsor) (tape available from Senate Staff Services); Hearings on S.B. 216 Before the House Comm. on Higher Educ., 69th Leg., R.S. (Apr. 22, 1985) (testimony of Mike Sanders, Texas Tech University) (tape available from House Audio/Visual Services Office).

[20]*See* S.B. 216, 69th Leg. (1985) (Introduced version).

[21]*See* Senate Educ. Comm., Bill Analysis, C.S.S.B. 216, 69th Leg., R.S. (1985); Hearings on S.B. 216 Before the Senate Educ. Comm., 69th Leg., R.S. (Feb. 6, 1985) (testimony of Senator Montford, sponsor) (tape available from Senate Staff Services); *see also* House Comm. on Higher Educ., Bill Analysis, S.B. 216, 69th Leg., R.S. (1985) ("Currently, institutions of higher education collect a variety of fees, *e.g.,* returned checks, late registration, processing fees, etc. not covered by any statute."). Mike Sanders, on behalf of Texas Tech University, later told the House Committee on Higher Education: "We've always had incidental fee structures, some of us have just not had the statute, and the state auditor started raising questions as to whether or not we could charge these incidental fees, so all this would do is sanction an existing incidental fee structure in the institutions that do not have a specific statute." Hearings on S.B. 216 Before the House Comm. on Higher Educ., 69th Leg., R.S. (Apr. 22, 1985) (testimony of Mike Sanders, Texas Tech University) (tape available from House Audio/Visual Services Office).

Some members of the Senate viewed Senate Bill 216 as merely codifying an existing, accepted practice.[22] Senator Montford, the bill's sponsor, explained: "Since our institutions have historically charged these incidental fees, I think it's preferable that we should have a solid statutory basis on which they can be predicated."[23] He was hesitant to be "too picky" with the definition of the fees, preferring to allow each board of regents to determine the types of fees it needed to charge in order to cover the costs of incidental services.[24]

Other members were reluctant to increase costs to college and university students. Senator Truan said, "[W]e're going to be called upon to increase tuition, and I'm just wondering to what extent we're going to increase total cost of the students going to school."[25] The lack of a limited definition of incidental fees was of particular concern to some members. Said Senator Edwards, "I would want to be cautious also before we allow a carte blanche of universities to increase incidental fees at their pleasure and then define incidental fees in the way in which they would like. I think there should be some constraint on them . . . ."[26]

A subcommittee was convened to consider the issue, and the subcommittee recommended adoption of the definition that now appears in the statute. The definition's purpose, according to Senator Caperton, was to illustrate the kinds of incidental fees contemplated by the bill while leaving colleges and universities with some leeway in determining the fees they need to impose. "It's not limited to [the fees listed], but it is designed to give the individual institutions some clue about which we speak," he said.[27]

The definition of incidental fees was discussed again on the floor of the Senate in this exchange between Senator Farabee and Senator Montford:

> Senator Farabee: Senator Montford, I have no quarrel with the idea of fees for incidental matters such as a breakage or a bad check. But what worries me in the bill is . . . when it says "without limitation." Could you explain for

---

[22]See Hearings on S.B. 216 Before the Senate Educ. Comm., 69th Leg., R.S. (Feb. 6, 1985) (statement of Senator Montford) (tape available from Senate Staff Services); Hearings on S.B. 216 Before the House Comm. on Higher Educ., 69th Leg., R.S. (Apr. 29, 1985) (tape available from House Audio/Visual Services Office).

[23]See Hearings on S.B. 216 Before the Senate Educ. Comm., 69th Leg., R.S. (Feb. 6, 1985) (statement of Senator Montford) (tape available from Senate Staff Services).

[24]Id.

[25]Hearings on S.B. 216 Before the Senate Educ. Comm., 69th Leg., R.S. (Feb. 6, 1985) (statement of Senator Truan) (tape available from Senate Staff Services).

[26]Senator Edwards was remarking on a proposed committee substitute that would have authorized incidental fees without including any definition or examples of the fees. That substitute was not adopted by the committee.

[27]Hearings on S.B. 216 Before the Senate Educ. Comm., 69th Leg., R.S. (Feb. 6, 1985) (statement of Senator Caperton) (tape available from Senate Staff Services).

the purpose of legislative intent, does this open it up to allow the board of regents at any college . . . to set fees without limitation?  What limitations are there really?

Senator Montford:  Senator, the reason that we could not make an exclusive definition was because of the fact that . . . the need for these types of fees occur and come about from time to time.  This definition, if anything, was an attempt to specifically name areas that we could address these fees to.  So if anything it was an attempt to codify the legislative intent of the types of fees that we were looking at.

Senator Farabee:  And so what you mean, for the purposes of legislative intent of this, is not any kind of general fee, like perhaps a head tax for people who go to school at night or people who go to school in the afternoon, but fees directly related to some breakage or service.

Senator Montford:  Yes.  That's correct.  I would certainly chime in that that was the legislative intent of this bill.[28]

In the House of Representatives, members of the Committee on Higher Education also expressed concern about the scope of permissible incidental fees.  Representative Garcia asked, "What does 'without limitation' mean?"  According to Representative Uher, "It means that even though they identify some of these incidental fees, there could be some other ones that the legislation did not foresee."[29]  Representative Uher assured the committee that excessive fees would not be a problem.  "Really, when you look at the incidental fees we are talking about, we are talking about a very minute, small area . . . ."[30]  He described the fees as "mostly insignificant."[31]

The legislative history of Education Code section 54.504 indicates to us that the legislature intended to give colleges and universities some discretion in determining what fees to collect as incidental fees under authority of the statute.  At the same time, it is evident that the legislature did not intend to give institutions unlimited power to define incidental fees.  It appears to us that section 54.504 was not intended to be used as a major source of revenue, nor as a source of funds to finance permanent college improvements.[32]  The types of fees contemplated by section 54.504 are the types

[28]Debate on S.B. 216 on the Floor of the Senate, 69th Leg., R.S. (Feb. 18, 1985) (tape available from Senate Staff Services).

[29]Hearings on S.B. 216 Before the House Comm. on Higher Educ., 69th Leg., R.S. (Apr. 29, 1985) (statement of Representative Uher) (tape available from House Audio/Visual Services Office).

[30]Id.

[31]Id.

[32]We note that chapter 55 of the Education Code authorizes institutions of higher education other than public
(continued...)

listed there: late registration fees, library fines, microfilming fees, thesis or doctoral manuscript reproduction or filing fees, bad check charges, application processing fees, and laboratory breakage charges. All of these, we believe, fall within the ordinary meaning of the term "incidental," *i.e.*, "being likely to ensue as a chance or minor consequence."[33] They share the characteristic of being assessed only upon a certain action or inaction on the part of particular students or prospective students, rather than the characteristic of being collected from all students merely as incident to their enrollment. They are not like the general "head tax" described by Senator Farabee as being outside the scope of the statute.[34]

Judging only from the brief description in your letter, it does not appear to us that the district's "mandatory technology fee," which is applicable to all students enrolled in the district for credit rather than particular students based on a certain action or inaction, is the type of fee contemplated by the legislature when it authorized institutions of higher education to collect incidental fees. However, as we discussed above, it is for the district's governing board to decide in the first instance whether the fee is an incidental fee authorized by section 54.504.

Your next question is whether a fee imposed under section 54.503 or 54.504 would be subject to the requirements of section 54.503(b) through (f). Subsections (b) through (f) of section 54.503 apply only to student services fees imposed under the authority of section 54.503. Only one provision in section 54.503 expressly does not apply to community colleges.[35] A student services fee imposed under section 54.503 is subject to all the applicable requirements of that section.

Finally, you ask whether a county-wide community college district, with seven separately accredited colleges throughout the district, may transfer student services fees charged pursuant to section 54.503 between the colleges regardless of which college collected the fee. We conclude that it may.

Public junior college districts are created upon authorization by the Texas Higher Education Coordinating Board (the "coordinating board") and compliance with other statutory requirements

---

[32](...continued)
junior colleges to issue bonds and collect fees for the purpose of financing campus infrastructure. *See* Educ. Code ch. 55. Section 130.123 authorizes public junior colleges to do the same. *Id.* § 130.123.

[33]WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 609 (9th ed. 1983).

[34]*See supra* discussion at note 28; *see also* Hearings on S.B. 216 Before the House Comm. on Higher Educ., 69th Leg., R.S. (Apr. 22, 1985) (statement of Representative Armbrister) (tape available from House Audio/Visual Services Office) ("It should be important to note in here that . . . the definition of incidental fees are those that sometimes that we see because of inaction by the part of students or prospective students in filing rather than any type of a building use or something like this. This doesn't touch those at all. These are things like library fines . . . .").

[35]*See* Educ. Code § 54.503(b) ("All compulsory student services fees charged and collected under this section by the governing board of an institution of higher education, other than a public junior college, shall be assessed in proportion to the number of semester credit hours for which a student registers.").

and regulations of the coordinating board.[36] While the coordinating board exercises general control over the colleges,[37] each approved college district is governed, administered, and controlled by a board of trustees.[38] The board of trustees may establish and operate branch campuses, but the campuses remain within the role and scope of the junior college district as determined by the coordinating board.[39] The coordinating board's rules regarding the establishment of junior college branch campuses provide that in its program aspects, a branch campus is equivalent to an independent community college, and therefore must maintain minimum course, size, and staffing requirements.[40] Branch campuses are not governed by separate boards of trustees, however. Governing power, including the authority to collect taxes, issue bonds, and receive appropriations of state funds, remains with the board of trustees of the district.[41]

This is true even if the branch campuses are separately accredited. The coordinating board requires accreditation by an appropriate accrediting entity, usually the Southern Association of Colleges and Schools, in order for a junior college to be certified to receive appropriations of state funds.[42] It is our understanding that each college within a college system may be separately accredited, or the district may be accredited as a whole. In any event, accreditation does not affect the organization and governance structure of community college districts set out in the Education Code.

Funds collected as student services fees pursuant to Education Code section 54.503 are local funds which may be retained and controlled by the institution[43] subject to the accounting, budgeting, and reporting requirements of section 54.503. In our view, the authority of a community college district board of trustees to retain and control local funds includes the authority to distribute the funds among campuses in the district as the board deems appropriate. We therefore find no legal impediment to the reallocation of funds collected from student services fees among the branch campuses within the district's college system, provided the funds are used for student services which "directly involve or benefit students" and are "separate and apart from the regularly scheduled

---

[36]*See id.* § 130.001.

[37]*Id.; see generally id.* ch. 130.

[38]*See id.* §§ 130.015 (providing for control by board of trustees of public junior college established by independent school district or city); .040 (providing for control by board of trustees of union junior college, county junior college, or joint-county junior college).

[39]*Id.* § 130.086(a).

[40]19 T.A.C. § 5.265.

[41]*See* Educ. Code §§ 130.121, .123; General Appropriations Act, Act of May 25, 1995, 74th Leg., ch. 1063, 1995 Tex. Gen. Laws 5242, 5633-43.

[42]*See* 19 T.A.C. §§ 9.61 - .77 (setting out the basic standards for public junior colleges).

[43]Educ. Code § 51.002(a)-(b).

academic functions" of the college.[44] The district's reallocation of fees is, of course, subject to review by a court for abuse of discretion. A discretionary decision by an institution of higher education will be set aside if it is arbitrary or unreasonable, or if it violates the law.[45]

## S U M M A R Y

Section 54.503 of the Education Code permits an institution of higher education to charge a "student services fee" approved by the institution's governing board if the services funded by the fee "are separate and apart from the regularly scheduled academic functions of the institution" and "directly involve or benefit students." Whether a particular service falls within section 54.503's definition of a student services fee is normally a determination to be made in the first instance by the institution's governing board, subject ultimately to judicial review. A student services fee imposed under section 54.503 is subject to all the applicable requirements of that section.

Section 54.504 of the Education Code allows the governing board of an institution of higher education to fix "incidental fees" which may be collected from current and prospective students. The types of fees contemplated by section 54.504 are the types listed in the statute, all of which share the characteristic of being assessed only upon a certain action or inaction on the part of particular students or prospective students, rather than the characteristic of being collected from all students merely as incident to their enrollment. Whether a particular fee falls within the scope of the incidental fees statute is a determination to be made by the institution's governing board in the first instance, subject to review by a court.

---

[44]*See id.* § 54.503(a).

[45]*See Foley v. Benedict,* 55 S.W.2d 805, 808 (Tex. 1932). It is our understanding that a student admitted to one college in the district's college system is automatically admitted to all of the colleges. Presumably, such a student has the privilege of taking classes at and using the facilities of all the campuses. We can conceive of a situation, however, where fee-paying students do not have access as a practical matter to other campuses receiving reallocated funds from student services fees. A court might find in such a case that the reallocation of funds is contrary to the requirements of section 54.503 or is an abuse of the governing board's discretion.

A county-wide community college district, with separately accredited colleges throughout the district, may transfer student services fees charged pursuant to section 54.503 between the colleges regardless of which college collected the fee.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Barbara Griffin
Assistant Attorney General