

# The Attorney General of Texas

October 5, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. E. D. Walker, Chancellor
The University of Texas System
601 Colorado Street
Austin, Texas 78701

Opinion No. MW-373

Re: Agreement between the University of Texas Law School Foundation and the University of Texas School of Law

Dear Mr. Walker:

You inquire about the relationship between the University of Texas and the University of Texas Law School Foundation. The University of Texas Law School Foundation is a nonprofit corporation with the purpose of supporting the educational undertaking of the School of Law of the University of Texas. It solicits donations and expends funds to benefit the law school, acting as conduit and coordinator of gifts made by other parties. You state that the foundation and school of law wish to formalize their relationship through a Memorandum of Understanding which you have submitted to us. The memorandum states the foundation's intent to continue to make donations to the university, describes the purposes to be served by these donations, and states certain conditions under which the university will accept them.

You ask whether the university's compliance with its representations under the Memorandum of Understanding would constitute a gift or grant of public money to a corporation in violation of article III, section 51 of the constitution, which provides in pertinent part:

> The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever.

The Memorandum of Understanding raises this constitutional question because, in addition to providing for donations flowing from the foundation to the law school, it also states that the law school will provide, for example, office space, utilities, and some staff assistance to the foundation.

We must first, however, determine whether the university has statutory authority to accept the terms of the five sections of the memorandum.  Section 65.31 of the Education Code states some relevant powers of the University of Texas Regents.

> (a) The board is authorized and directed to govern, operate, support, and maintain each of the component institutions that are now or may hereafter be included in a part of The University of Texas System.
>
> . . . .
>
> (c) The board has authority to promulgate and enforce such other rules and regulations for the operation, control, and management of the university system and the component institutions thereof as the board may deem either necessary or desirable....
>
> (e) The board is specifically authorized, upon terms and conditions acceptable to it, to accept and administer gifts, grants, or donations of any kind, from any source, for use by the system or any of the component institutions of the system.

Section 65.31(e) of the Education Code gives the regents considerable discretion to accept donations "of any kind" with conditions attached by the donor.  We believe this broad language authorizes the regents to accept gifts of money, other intangibles, real and personal property, and services.  See Letter Opinion R-1009 (To Honorable Frank Smith, Jan. 27, 1948).  The conditions attached to the grant must be acceptable to the regents.

The board has considerable latitude in exercising powers delegated to it by the legislature, subject to review for abuse of discretion.  Foley v. Benedict, 55 S.W.2d 805 (Tex. 1932); Letter Advisory No. 6 (1973).  However, the board is charged with the governing of the university system, see Education Code Section 65.11, and the exercise of its specific powers must be in furtherance of this duty.  A "university system" is the association of agencies of higher education under a single governing board.  Educ. Code §61.00319.  The broad powers granted the regents by section 65.31(a), (c), and (e), i.e., to support and maintain, to promulgate rules and regulations, and to accept gifts, are to be exercised on behalf of the component institutions of the system.  The University of Texas at Austin is an "institution of higher education within The University of Texas System."  Educ. Code §67.02.  Thus the board of regents must exercise its powers of governance for the purpose of higher education as carried out by the component institutions.  Grants accepted for the university at Austin must reasonably relate to its purposes as an

educational institution. See Attorney General Opinions M-391 (1969); WW-334 (1958); WW-5 (1957).

The Memorandum of Understanding contains a number of statements as to the foundation's goal of serving the educational purposes of the law school and the kind of assistance it has rendered in the past and proposes to render in the future. These statements are found in sections one through three:

1. The Foundation has engaged in development activities for The University of Texas School of Law (The Law School), has assisted in maintaining alumni relations on behalf of The Law School, has participated in the Continuing Legal Education (CLE) program of The Law School, has provided various and substantial support for the development of The Law School, its faculty and staff, and has furnished important administrative and other services to The Law School and The University. The continuation of these activities is essential to the maintenance of a law school of the first class. The University and The Foundation deem it appropriate to, and do hereby, memorialize the nature of the relationship between The Foundation and The University and The Law School, ratify and approve these past activities by The Foundation, and agree mutually for the future regarding the respective roles, rights, and obligations of The University and The Foundation in this relationship.

2. The Foundation is a nonprofit educational corporation chartered in 1952 for the purposes of supporting the educational undertaking of The Law School by furthering legal education, legal research, financial assistance to deserving students, and the progress of law, and of soliciting donations for particular objectives to accomplish such purpose, and of cooperating with the advancement of the general welfare of The University as a whole. The Statement of Development Policy by the Board of Trustees of The Foundation includes the activities of securing, holding in trust, and administering funds for the benefit of The School of Law of The University of Texas at Austin.

3. The Foundation agrees that, during the term of this Memorandum of Understanding, The Foundation: (1) will continue to invest and administer the funds presently on hand for the benefit of The Law School; (2) will continue to

conduct a development program for the benefit of
The Law School and The University to insure
procurement and retention of outstanding law
faculty members, to enrich the educational
environment of The Law School, and by other
reasonable means to enhance the prestige of, and
to advance, The Law School, and will utilize its
expertise, resources, and personnel for such
purposes; (3) will use reasonable efforts to
finance and conduct, or work with law school
alumni groups interested in financing and
conducting, programs and publications designed to
maintain good alumni relations on behalf of The
Law School; (4) will use on behalf of The Law
School, or will lease, loan, or give to The Law
School from time to time, to the extent that it is
feasible to do so, equipment needed by The Law
School or helpful to its operations; (5) will
continue to render other assistance to The Law
School of the general nature of the assistance
that it has rendered in the past, and to render
other assistance to The Law School in the future
as may mutually appear desirable; and (6) will
continue to recognize The School of Law of The
University of Texas at Austin as the sole
beneficiary of its development policy and its
educational support.

These provisions restate and elaborate on the foundation's
purpose, as expressed in its charter, which is to support legal
education by soliciting and expending donations for that purpose.
They express numerous specific purposes directed at serving the law
school's educational enterprise:  the provision of administrative
services, financial aid for students, and funds and services directed
at faculty recruitment.  In addition, it has participated in the law
school Continuing Legal Education program and has worked with alumni
groups.  With the possible exception of the latter endeavor, these
activities are closely related to the educational function of the
university.  See Attorney General Opinions M-391 (1969)(provision of
financial aid to students); WW-334 (1958)(Texas Tech television
channel may accept commercial programs provided directors find
reasonable relationship to statutory purposes of college); WW-5
(1957)(Texas Tech may engage in educational television broadcasting);
V-1476 (1952)(salary of university comptroller may be supplemented
with donated funds); O-4167 (1941)(University may spend funds for
purpose of soliciting gifts from potential donors).  Cf. Attorney
General Opinion M-223 (1968)(hospital district may spend public funds
to pay travel costs of employees who recruit prospective employers).
The legislature has in fact recognized that universities may cooperate
with alumni associations.  See V.T.C.S. art. 1396-2.23A(E)(8).  It
has, however, prohibited the use of appropriated funds for the support
and maintenance of alumni organizations or activities.  General

Appropriations Act, Acts 1979, 66th Leg., ch. 843, art. IV, §17, at 2859. Thus, if the regents of the university believe that the support of alumni organizations will benefit the educational purposes of the school, they will have to locate a permissible funding source. The foundation can provide precisely that.

Section four of the memorandum states in part the terms and conditions on which the university is willing to accept donations from the foundation:

> 4. The University agrees that, during the term of this Memorandum of Understanding, The University: (1) will provide reasonable space in or near The Law School building, as approved by The University President and The Law School Dean, to The Foundation for the purpose of carrying out its obligations hereunder and for its general operations on behalf of The Law School; (2) will provide the utilities and telephone service reasonably needed by The Foundation in carrying out its activities under this Memorandum of Understanding; and (3) will permit reasonable use of University equipment and personnel as needed to coordinate the activities of The Foundation with the educational operations of The Law School, and hereby expressly recognizes that the Dean, Associate Deans, and members of The Law School faculty may reasonably assist from time to time in development programs as may be needed or helpful in coordinating those Foundation activities with the operations of The Law School.

In our opinion, the university has statutory authority to provide the foundation with the items enumerated in section 4 as "terms and conditions" attached to donations. See Educ. Code §65.31(e). University property is state property, see Walsh v. University of Texas, 169 S.W.2d 993 (Tex. Civ. App. - El Paso 1942, writ ref'd), but the regents have power to determine the use of campus buildings. Splawn v. Woodard, 287 S.W. 677 (Tex. Civ. App. - Austin 1926, no writ). Compare V.T.C.S. art. 601b, §4.01 (Purchasing and General Services Commission's control of public building does not extend to higher education buildings).

Counties have been permitted to provide a private entity with space in a public building where convenient or necessary to carry out a county purpose. See Sullivan v. Andrews County, 517 S.W. 2d 410 (Tex. Civ. App. - El Paso 1974, writ ref'd n.r.e.)(county leased clinic to physicians); Dodson v. Marshall, 118 S.W. 2d 621 (Tex. Civ. App. - Waco 1938, writ dism'd)(space in courthouse leased to individual for concession stand); Attorney General Opinions MW-200 (1980)(county provided rent free space in courthouse to employees credit union); H-912 (1976)(contract with physician to practice in

county medical clinic). Counties have only those powers expressly or impliedly granted by the constitution and statutes. <u>Canales v. Laughlin</u>, 214 S.W.2d 451 (Tex. 1948); <u>Anderson v. Wood</u>, 152 S.W. 2d 1084 (Tex. 1941). The regents of the University of Texas have far broader powers to operate and manage component institutions within the system pursuant to regulations they deem necessary and desirable. Educ. Code §65.31(c). In our opinion, the board of regents has statutory authority over the provision of space to private entities at least as great as, and in all probability greater than, that of the commissioners court. The provision of utilities may be regarded as incidental to the provision of space in the law school in view of the difficulty of the foundation making separate provision for them.

Section 65.31(e) of the Education Code permits the university to "accept and administer" grants. This language implicitly acknowledges that the university will have to devote some of its resources to administering grants it accepts, in particular the services of personnel. The regents have statutory authority to decide whether or not to accept a grant which involves particular administrative costs for the university.

There is little or no precedent for a governmental body providing telephone services and the use of equipment to a private entity which uses space provided by the governmental body. <u>See</u> Attorney General Opinion MW-200 (1980)(county may provide media free space in courthouse, but may not provide free telephone service). However, we believe the regents may regard the provision of this assistance as incidental to the provision of office space in the law school to the foundation. The foundation exists to serve the educational purposes of the law school by making various types of donations. The joint purposes of the law school and foundation may possibly be accomplished in a more cost effective way if the board of regents provides the foundation with a telephone and some equipment, rather than requiring it to use foundation resources to pay its telephone bills and buy its own copy machine. We conclude that the board of regents has authority under section 65.31 of the Education Code which permits the law school to provide to the foundation in reasonable amount the resources enumerated in section four of the memorandum.

Section five of the agreement states as follows:

> 5. It is expressly mutually agreed that: (1) staff personnel working for or serving The Foundation may be paid as University employees, but the salaries and The University's portion of retirement benefits for such personnel will be reimbursed to The University by The Foundation, and other usual benefits for such personnel will be provided by The University; however, all such personnel are subject to all of the rules, regulations, and personnel policies of The University; (2) funds raised by the development

> activities of The Foundation may be subject to a
> reasonable management or operations charge or fee
> by The Foundation, but all such charges or fees in
> regard to endowed funds shall come from income and
> not from corpus; all funds, whether endowed,
> restricted, or unrestricted, raised by the
> development activities of The Foundation shall be
> held, invested, managed, and disbursed by The
> Foundation for the sole benefit of The Law School,
> subject to any restrictions placed thereon by
> particular donors.

We understand section five, subsection (1) to provide that foundation employees are permitted to be on the university payroll and to be eligible for retirement and other benefits provided by the university to its own employees. The statutes and appropriations act forbid this arrangement. The appropriations act provides funds for departmental operating expense and staff benefits. Acts 1979, 66th Leg., ch. 843, art. IV, at 2787. See V.T.C.S. art. 6813ß. In our opinion, these funds are appropriated for university employees, and may not be specifically allocated for salaries or fringe benefits for the employees of a private corporation which is under contract with the university. See Acts 1979, 66 Leg., ch. 843, art. V, §1(p), at 2895. Nothing in the university's budget request to the sixty-sixth legislature indicates that any of the law school's departmental operating expense was to be allocated to foundation employees. State of Texas Request for Legislative Appropriations, Fiscal Years Ending August 31, 1980 and 1981, the University of Texas of Austin, at 74, 87.

Where authorized by law, state agencies may employ an independent contractor, but he does not occupy an office or position under the state nor is he an agent of the state. Attorney General Opinion V-345 (1947). See also Attorney General Opinion H-1304 (1978). In addition, the appropriations act may authorize an expenditure for a consultant. Attorney General Opinion S-13 (1953). However, where the appropriations act indicates that work is to be done by employees under the direct control of the agency, it may not expend its appropriation to contract for the performance of those services by an independent contractor. Attorney General Opinion S-80 (1953). In our opinion, employees of the Texas Law School Foundation are not entitled to be paid by the university. Nor are they entitled to receive vacation and sick leave benefits which the appropriations act provides state employees. Acts 1979, 66th Leg., ch. 843, art. V, §7(a),(b),(c), at 2901.

Employees of the Law School Foundation may not become members in the Teacher Retirement System. Section 3.03(b) of the Education Code provides as follows:

> Every employee in any public school or other
> branch or unit of the public school system of this

>     State is a member of the retirement system as a
>     condition of his employment.

"Employee" is defined in part as "any person employed to render service on a full-time, regular salary basis ... by the board of regents of any college or university." Educ. Code §3.02(a)(3). In Attorney General Opinion O-3399 (1941), it was determined that public school teachers who were employed and paid by the federal government and whose services were controlled by a federal agency could not participate in the teacher retirement system. These persons were not teachers as that term is defined in the retirement statute because they were not employed by any state educational agency but were employed directly and exclusively by the federal government. See also Attorney General Opinion O-3409 (1941). Since employees of the Law School Foundation are not university employees, they are not eligible for retirement benefits under the teacher's retirement system.

Nor are employees of the foundation entitled to participate in the group insurance plan which the university provides its employees. Article 3.50-3 of the Insurance Code, the Texas State College and University Employees Uniform Insurance Benefits Act, provides group coverage for all employees of Texas state colleges and universities. "Employee" is defined as any person employed by a governing board of a state university, senior or community/junior college, or any other agency of higher education. Ins. Code art. 3.50-3, §3(a)(4)(A). Employees of the Texas Law School Foundation do not fit this definition and consequently are not eligible for insurance benefits under article 3.50-3 of the Insurance Code. See also V.T.C.S. art. 5221b-6(b)(2)(unemployment compensation for state employees); art. 6252-19 (Tort Claims Act makes state liable for torts of persons in paid service of state); art. 8309g (workmen's compensation for state employees).

Having examined the memorandum from the perspective of the university's statutory authority to agree to it, we turn to your question: whether the university would violate article III, section 51 by complying with its representations under the memorandum. Article III, section 51 of the constitution provides in pertinent part:

>     The Legislature shall have no power to make
>     any grant or authorize the making of any grant of
>     public moneys to any individual, association of
>     individuals, municipal or other corporations
>     whatsoever

This provision prevents the legislature from giving away public funds or enacting a statute which authorizes a state agency or political subdivision to do so. See Texas Pharmaceutical Ass'n v. Dooley, 90 S.W. 2d 328 (Tex. Civ. App. - Austin 1936, no writ). Thus, the legislature may not authorize the University of Texas to grant public funds to an individual or corporation.

Although article III, section 51 on its face prohibits only grants of money, it has been liberally construed to prohibit the grant of state property and contract rights as well as money. Rhoads Drilling Co. v. Allred, 70 S.W. 2d 576, 582 (Tex. 1934)(dicta); Attorney General Opinions WW-790 (1960); WW-153 (1957).

We note that provisions one through three of the memorandum do not raise the constitutional issue which concerns you. These provisions describe the foundation's donative purposes, and do not refer to benefits flowing from the university to the foundation. Section five does not raise the article III, section 51 issue, because various statutes prevent the university from providing foundation employees with the described benefits.

Section four of the memorandum does, however, raise the constitutional issue. It states that the university will provide the foundation with office space, telephone service, utilities, assistance from university staff and the use of university equipment. We have determined that the regents have statutory authority to provide this assistance to the foundation; we must next consider whether statutes granting such authority are constitutional as applied to the situation you present.

Article III, section 51 of the constitution requires that a grant by the university to the foundation must serve a public purpose, appropriate to the function of a university, and that adequate consideration must flow to the public. Attorney General Opinions MW-89 (1979); H-1260 (1978); H-520 (1975); H-403 (1974). In addition, the university must maintain some controls over the foundation's activities, to ensure that the public purpose is actually achieved. Attorney General Opinions MW-89 (1979); H-1309 (1978); H-912 (1976). If these conditions are met, the grant by the public entity is not unconstitutional.

As made clear by sections one through three of the memorandum, and by its charter, the foundation exists to serve the educational function of the law school. Public education is an essential governmental function. Rainey v. Malone, 141 S.W. 2d 713 (Tex. Civ. App. - Austin 1940, no writ). The assistance provided by the foundation to the university helps it accomplish a public purpose entrusted to it.

The foundation's charter requires it to devote its resources to benefitting the law school; therefore, the law school would still receive donations from the foundation even if it did not provide office space and other in kind assistance. See Boyd v. Frost National Bank, 196 S.W. 2d 497 (Tex. 1946).

Nonetheless, a public purpose may be served by providing the foundation with rent-free space in the law school. This determination is to be made by the university in the first instance, and if challenged, ultimately by a court. Attorney General Opinion H-403

(1974); see also Dodson v. Marshall, supra, at 624. Although we lack sufficient information to state with certainty how the foundation's presence in the law school serves the public purpose of higher education, we can at least raise some possibilities for consideration by the regents.

For example, if law students and faculty members have easy access to the foundation office, they may learn about and benefit from the scholarship and research grants it offers. The foundation's presence in the law school may help achieve full and efficient use of its resources by prospective recipients. It will also serve the convenience of persons in the law school who can contact the foundation with a minimal expenditure of time. See Attorney General Opinion MW-200 (1980).

Law school administrators work with the foundation to coordinate foundation activities with those of the law school. Their convenience will be served if the foundation is easily available for consultations. If the foundation also provides administrative services, these can be utilized easiest on the law school premises.

Another factor to consider is whether the provision of office space and other assistance to the foundation enhances the cost effectiveness of operating the foundation. The regents might consider the value of the office space, telephone, utilities, equipment, and staff assistance the law school will provide as compared to equivalent items purchased on the market. Rental paid for an office would probably include a landlord's profit. Since the foundation's resources are to be used to benefit the university, savings on overhead costs should go to the law school. Providing the foundation with an office might free some resources worth more than the office from use for overhead so they could be devoted to law school education.

In addition to serving a public purpose, the provision of office space and related assistance to the foundation must be subject to controls, contractual or otherwise, to insure that the public purpose is met. The Memorandum of Understanding is not a contract, since the representations made by the foundation either relate to its past activities or express generalized intentions as to future help. The promises appear too vague to be enforceable as a contract, and the foundation's compliance with its legal duties under the charter does not constitute consideration. See Teague v. Edwards, 315 S.W. 2d 950 (Tex. 1958).

However, other controls exist to assure that the provision of university office space and other benefits to the foundation serves and will continue to serve a public purpose, whether it is the convenience of the law school or increasing the value of the foundation's contributions to public education. The board of regents has sufficient rule-making power to establish controls over this transaction. See Educ. Code §65.31. In particular, it has authority

to control the use of university property. Splawn v. Woodard, supra. The memorandum recognizes this in noting that the university president and law school dean will control the allocation of space to the foundation subject to a test of reasonableness. Other office-related assistance going to the foundation is provided subject to a test of reasonableness. Memorandum, section 4. Law school administrators can see that the office space and other items provided actually serve the law school's purposes.

With respect to gifts for professorships and scholarships, section 65.36 of the Education Code provides detailed controls as to conditions which may be attached to these donations. Moreover, the convenient location of the foundation may enable law school administrators to shape foundation activities to some extent toward fulfilling the current needs of the law school. If the foundation's presence on university property ceases to serve a public purpose, it may be removed at any time, since it has no lease. The university has control of its premises and may require the foundation to vacate the office it uses. Cf. Morris v. Nowotny, 323 S.W. 2d 301 (Tex. Civ. App. - Austin 1959, writ ref. n.r.e.), cert. denied, 361 U.S. 889 (1959).

Additional controls over the allocation of university space to the foundation are found outside of the university. The state auditor is required to audit the use of public funds by the university and report to the Legislative Audit Committee. V.T.C.S. art. 4413a-13(1),(2). Thus, university expenditures on behalf of the foundation will be subject to examination by the auditor and legislature.

In addition, the Open Records Act defines "governmental body" to include the portion of every corporation "which is supported in whole or in part by public funds...." V.T.C.S. art. 6252-17a, §2(F). Since the foundation receives support from the university that is financed by public funds, its records relating to the activities supported by public funds will be subject to public scrutiny. See Open Records Decision No. 228 (1979).

Despite the absence of contractual controls designed to ensure that the presence of the foundation in the law school will serve a public purpose, we believe the regents can exercise sufficient control over this transaction pursuant to statutory authority. Furthermore, additional limitations on the foundation derive from other statutes as discussed above. Consequently, the university may comply with its representation under section four of the memorandum.

## S U M M A R Y

The University of Texas may provide the Law
School Foundation with office space and other

assistance where a public purpose will thereby be served. The regents have authority to decide in the first instance whether a public purpose is served. Sufficient statutory controls exist to ensure that the public purpose will be achieved. Thus, the university may provide the foundation with the stated benefits without violating article III, section 51 of the constitution.

The university lacks authority to place foundation employees on its payroll and give them fringe benefits reserved for state employees.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Susan Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Jim Moellinger